UNITED STATES of America,
Plaintiff-Appellee,

v.

Alfonso Rivera ESCAMILLA and
Salvador Guerrero Yglesias,
Defendants-Appellants.

No. 78–5170.

United States Court of Appeals,
Fifth Circuit.

Feb. 26, 1979.

Russell M. Aboud, El Paso, Tex., (Court-appointed), for Escamilla.

Bruce J. Ponder, El Paso, Tex., (Court-appointed), for Yglesias.

Jamie C. Boyd, U. S. Atty., LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before INGRAHAM, GEE and FAY, Circuit Judges.

FAY, Circuit Judge:

Appellants, Alfonso Rivera Escamilla and Salvador Guerrero Yglesias were charged with: 1) conspiring to rob a Purolator armored van in Fort Bliss, Texas in violation of 18 U.S.C. §§ 371 and 2111; 2) taking three bags of currency belonging to the United States Government in violation of 18 U.S.C. §§ 2 and 2111; and 3) stealing $13,235 belonging to the United States in violation of 18 U.S.C. § 641. A jury found Escamilla guilty of both conspiracy and robbery and found Yglesias guilty of conspiracy. The jury could not come to a decision as to count three (18 U.S.C. § 641) and the trial court declared a mistrial on this count. Subsequently, the government dismissed this third count.

Escamilla was given concurrent sentences of five years for the conspiracy conviction and nine years for the robbery conviction. Yglesias was given a sentence of five years for the conspiracy conviction.

Escamilla argues on appeal that the trial court committed reversible error by denying the motion for continuance to allow appellants the opportunity to obtain evi-

dence on the competency of George Longoria, a witness for the prosecution. Escamilla also argues that there was insufficient evidence to sustain his convictions. Yglesias argues the two points raised by Escamilla but adds another issue—that the trial court erred by refusing to make an independent determination of the admissibility of coconspirators' out-of-court statements. We find appellants received a fair trial, free of error, and affirm their convictions.

## I. FACTS

The facts reveal that a conspiracy was developed to rob an armored Purolator truck at the commissary in Fort Bliss, Texas. In accordance with the plan, the record reveals, appellant Escamilla recruited Manuel Leyva and George Longoria to participate in the robbery. Both Longoria and Leyva were introduced to Salvador Yglesias at separate times and had discussions with Yglesias regarding the robbery. On September 27, 1977 Escamilla visited Leyva and asked Leyva if he would be interested in earning $1,000. Leyva testified that Escamilla did not explain further but rather asked Leyva if he would meet Escamilla at his house later. Leyva went to Escamilla's house where Escamilla's brother, Escamilla and Leyva discussed the robbery. Louis Mendoza was in the house but was in another room when the plans were discussed. During the meeting on September 27, 1977 at Escamilla's house, Escamilla mentioned to his brother and to Leyva that "Sal" would also participate in the robbery. Leyva testified that on that date he did not know "Sal" was Salvador Yglesias. On September 30, 1977, Escamilla took Leyva to meet Salvador Yglesias at his residence. Thereafter, Escamilla, Leyva and Yglesias drove to what Leyva testified was "an unknown location" in Canutillo, Texas and discussed the robbery plans. After the discussion Escamilla, Leyva and Yglesias drove back to Yglesias' home and "left him off." Record, vol. 4 at 451.

Leyva testified that on Saturday, October 1, 1977 he phoned Escamilla and told Escamilla he did not want to "go through with it." Record, vol. 4 at 451. Leyva further testified that on Sunday, October 2, 1977 at approximately 10:30 P.M. Escamilla came to Leyva's house and asked Leyva what his problem was. Leyva testified that "I told him I just wasn't that kind of person or guy to hit that guy just like that." [1] However, despite his alleged reluctance, Leyva went to the Stardust Motel on Sunday evening but while at the motel he again backed out of the robbery. George Longoria testified that he and Escamilla had picked up Yglesias shortly before renting the Stardust Motel room and the three had driven around and discussed the details of the robbery. Yglesias was driven home by Escamilla and Longoria who then drove to the Stardust Motel where Longoria rented a room. [2] Graciela Zuniga also visited the motel room the night before the robbery. Zuniga was driven home by Escamilla who, according to Longoria, retained Zuniga's car to use on the day of the robbery. After Escamilla returned to the Stardust Motel, he and Longoria went to Escamilla's house where he showed Longoria "a mask and some clubs" to use in the robbery. Record, vol. 3 at 387. Both Longoria and Escamilla returned to the motel and at four in the morning they picked up Yglesias. Longoria testified that he and Escamilla left for the commissary in one car while Yglesias went in Zuniga's car. At the commissary in Fort Bliss Escamilla went in to work while Longoria and Yglesias waited fifteen minutes for the Purolator truck. After the driver of the truck got off and opened the door to the truck he was hit from the back with a club. Yglesias and Longoria "grabbed the money bags" and ran to the get-away car. Record, vol. 3 at 389. During the escape, Longoria dropped two money bags. Yglesias drove the get-away car while Escamilla used his position as an employee to delay the arrival of the military police.

---

1. The driver of the armored truck was hit on the head with a club during the robbery.

2. According to Longoria's testimony, Escamilla was with him at the time the motel room was rented.

The get-away car was parked behind a Shakey's Pizza Parlor and Longoria and Yglesias returned to the Stardust Motel where Louis Mendoza picked them up. The three stopped at Mendoza's residence before driving Yglesias back to his house. On the way back from Yglesias' house, Mendoza and Longoria stopped and buried the money bags in a hole dug by Mendoza. At noon on the day of the robbery Zuniga located her parked automobile and later that day learned from Escamilla that the robbery had been "pulled off" and that the money had been distributed at Yglesias' house. Record, vol. 3 at 306–307.

## II. INDEPENDENT DETERMINATION OF ADMISSIBILITY OF COCONSPIRATORS' OUT–OF–COURT STATEMENTS

■ Appellant Yglesias argues that the trial court erred in not making a determination, outside the presence of the jury, regarding the admissibility of coconspirators' statements.

For years the rule in this Circuit has been the one set out in *United States v. Apollo,* 476 F.2d 156 (5th Cir. 1973), which requires that a trial judge give a proper cautionary instruction regarding the role of hearsay evidence in conspiracy cases.[3] However, "[a]n instruction at the end of the trial cannot correct the erroneous refusal to give proper cautionary instructions when it was first requested." 476 F.2d at 163–164. *Apollo* followed the United States Supreme Court case of *Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953):

*Lutwak* established a minimum obligation on the trial judge in a conspiracy case in which extrajudicial statements of alleged co-conspirators are proffered to give a cautionary instruction on the limited uses of hearsay testimony, explaining clearly to the jury the requirement that the conspiracy itself and each defendant's participation in it must be established by independent non-hearsay evidence which must be given either prior to the introduction of any evidence or immediately upon the first instance of such hearsay testimony.

476 F.2d at 163.

Judge Sessions in this case instructed the jury on numerous occasions that the hearsay statements of coconspirators could not be considered by the jury unless proof of the conspiracy was provided by independent, non-hearsay testimony.[4]

Because the trial judge gave the proper cautionary instruction, and because *Apollo* clearly controls this case as the existing law of our Circuit, we find no error.

## III. CONTINUANCE

■ Both appellants argue that the trial court committed reversible error in denying the motion for continuance to permit appellants to have George Longoria examined by a psychiatrist to determine his competency as a witness.

A motion for continuance is addressed to the sound discretion of the trial court and its ruling will not be disturbed on appeal absent a showing of abuse of discretion. *Avery v. Alabama,* 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); *United States v.*

---

3. The *Apollo* procedural framework was recently redefined in this Court's opinion in *United States v. James,* 576 F.2d 1121, *petition for rehearing en banc granted,* 576 F.2d 1121, 1132 (5th Cir. 1978). However, the mandate in the panel opinion in *James* has not issued and therefore, *Apollo* remains the law of this Circuit until such time as the *en banc* opinion is published.

4. An example of the trial court's instructions to the jury is as follows:

Now, as to Mr. Yglesias, the Court's instruction previously was that until you were satisfied from independent, non-hearsay testimony, you could not consider this testimony. As to Mr. Yglesias, only when you find, if you ever find, that the conspiracy existed from independent, non-hearsay testimony, and that the defendant, Mr. Yglesias, was a member of that conspiracy, then and only then can you relate back and pick up this conversation for the purpose of considering Mr. Yglesias' involvement, if any, in the conspiracy.

Record, vol. 4 at 444.

*Siegel,* 587 F.2d 721 (5th Cir. 1979). The trial court also has broad discretion in determining whether or not to order psychiatric examinations. *United States v. Jackson,* 576 F.2d 46 (5th Cir. 1978). In *Jackson* we stated:

> The fact that a witness is a narcotics user goes not to his competency, but to his credibility. Defense counsel extensively cross-examined the "patients" about their drug experiences and also had access to questionnaires filled out by the "patients" when they first visited Dr. Jackson, as well as the results of the doctor's own examination of them. Regarding the requested mental examination, psychiatric opinions as to a witness' reliability in distinguishing truth from fantasy is [sic] inadmissible for impeachment purposes, for it invades the jury's province to make credibility determinations.

*Id.* at 48–49. (citations omitted)

We find appellants' contention that the trial court erred in not ordering a psychiatric examination to be without merit. Appellants' counsel had ample opportunity to cross-examine Longoria during the trial regarding his drug experiences. Longoria was adequately impeached by this extensive cross-examination and his reliability in distinguishing truth from fantasy was for the jury to determine. Furthermore, a voir dire examination of Longoria was conducted by counsel outside the presence of the jury and the trial judge determined that Longoria was able to testify. The record fails to disclose a sufficient basis for the trial court to have ordered a psychiatric examination. We find no abuse of discretion in the denial of the motion for continuance.

## IV. SUFFICIENCY OF EVIDENCE

█ Both appellants were sentenced to five years each on the conspiracy charge and both argue on appeal that the evidence was insufficient to convict them of conspiracy. It is well settled that on appeal, we must consider the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

To convict appellants of conspiracy, the evidence respecting each appellant's participation in the conspiracy must of itself be sufficient so that the jury could have found beyond a reasonable doubt that each knew of the conspiracy, that each had the deliberate, knowing and specific intent to join the conspiracy and that some member of the conspiracy committed an overt act in furtherance of the illegal operation. *United States v. Chandler,* 586 F.2d 593 (5th Cir. 1978).

There is ample evidence that each of the appellants participated and knew of the conspiracy and that members of the conspiracy committed an overt act in furtherance of this conspiracy by robbing the armored truck and by beating the driver of the truck. Appellant Escamilla's participation in the conspiracy was clearly established. Without enumerating the lengthy facts already set out in this opinion, we note that countless meetings were arranged and attended by Escamilla in planning the robbery. Similarly, appellant Yglesias was shown to have attended and participated in many of these meetings. The testimony of George Longoria,[5] Manuel Leyva and Graciela Zuniga, corroborated by the testimony of other government witnesses, clearly established that a conspiracy to rob the armored truck was planned and the robbery was carried out by appellants. Although hearsay evidence was presented to prove that a conspiracy existed, the government made a prima facie showing by non-hearsay evidence that a conspiracy existed, introduced sufficient evidence to connect both the declarant and appellants with the conspiracy, *see United States v. Beasley,* 545 F.2d 403, *remanded on other grounds,* 563 F.2d 1225 (5th Cir. 1977), and the trial judge gave the proper cautionary instruction to the jury, *see United States v. Apollo,* 476 F.2d at 163.

---

5. We have already held that the trial judge was correct in not ordering a psychiatric examination of Longoria.

Appellant Escamilla further alleges that the evidence was insufficient to convict him on the robbery charge. Even though Escamilla may not have been the one who actually hit the truck driver over the head and ran with the money bags, he clearly participated in the robbery. The guilt of a defendant may be established without proof that the accused personally committed every act constituting the offense charged.[6]

### V. CONCLUSION

We find there was sufficient evidence to sustain the conspiracy convictions of both Escamilla and Yglesias. We also find there was sufficient evidence from which the jury could have found Escamilla guilty of robbery.

We find the trial judge used the correct standard to determine the admissibility of coconspirators' hearsay statements by giving the proper instruction and we find he was correct in denying the continuance requested by appellants in order to obtain a psychiatric examination of Longoria.

The convictions are affirmed.

---

6. The jury was properly instructed that 18 U.S.C. § 2 states that guilt may be established without proof that the accused did every act constituting the offense. Record, vol. 4 at 711–712. 18 U.S.C. § 2 provides:

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.