**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Enrique M. SALINAS, Dan Sanchez, Jr.**
**and Lewis Woodul,**
**Defendants-Appellants.**

**No. 77–5824.**

United States Court of Appeals,
Fifth Circuit.

Sept. 4, 1979.

---

Gerald H. Goldstein, San Antonio, Tex., for Salinas.

Roy R. Barrera, Terrence W. McDonald, San Antonio, Tex., for Sanchez and Woodul.

LeRoy M. Jahn, W. Ray Jahn, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before GODBOLD, SIMPSON and RONEY, Circuit Judges.

SIMPSON, Circuit Judge:

On May 19, 1977, a grand jury returned a forty-nine count indictment against appel-

lants Enrique M. Salinas, Dan Sanchez, Jr., and Lewis Woodul, as well as others,[1] charging violations of 18 U.S.C. §§ 371 (conspiracy),[2] 656 (misapplication of bank funds),[3] and 1005 (false entries on bank records).[4] These charges grew out of the operation of the Citizens State Bank in Carrizo Springs, Texas. Following a lengthy trial,[5] the jury returned guilty verdicts on various counts against appellants.[6]

1. Also named in the indictment were Gretchen Salinas, Atilano de la Garza, Luis E. Salinas, Ron Guess, Blanca Alicia de Aldaco, Bicknell Eubanks, III, Urban Farrow, Jesus Davis, and Jose L. Flores. Unindicted co-conspirators named in the indictment were Juan Salinas, Alex Short, and Jim Bob Nance. Only appellants and two other defendants, Urban Farrow and Gretchen Salinas, went to trial. A judgment of acquittal was entered as to the charges against Farrow on all counts. Gretchen Salinas was found not guilty by the jury on all counts submitted to it, the district judge having previously entered a judgment of acquittal on three counts.

2. Section 371 provides:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.
18 U.S.C. § 371 (1976).

3. Section 656 provides:

Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank and trust company which has become a member of one of the Federal Reserve banks; and "insured bank" includes any bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation.
18 U.S.C. § 656 (1976).

4. Section 1005 provides:

Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, national bank or insured bank, without authority from the directors of such bank, issues or puts in circulation any notes of such bank; or

Whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or

Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank or trust company, which has become a member of one of the Federal Reserve banks; and "insured bank" includes any state bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation.
18 U.S.C. § 1005 (1976).

5. The trial commenced on July 27, 1977, and was completed on August 11, 1977; the trial transcript consists of 3,665 pages.

6. Salinas was convicted of conspiracy in violation of 18 U.S.C. § 371 (count 1), misapplying bank funds in violation of 18 U.S.C. § 656

For the reasons set forth below we reverse the judgments of conviction entered on all counts on which the jury found appellants guilty of violating 18 U.S.C. § 656 (1976) (misapplication of bank funds), and remand for a new trial consistent with this opinion. In all other respects the judgments of conviction are affirmed.

## I. FED.R.CRIM.P. 30

■ Appellants assert that the district judge committed reversible error in denying their[7] repeated and specific requests to present objections to the court's charge to the jury outside the hearing *and presence* of the jury, as mandated by Rule 30 of the Federal Rules of Criminal Procedure. Conceding a technical failure by the district judge to comply with Rule 30's "out of the presence of the jury" requirement, the government maintains that appellants were not prejudiced by this allegedly harmless procedural error. *See* Fed.R.Crim.P. 52(a). We hold that the district court committed reversible error in violating the express requirements of Rule 30 where the court's instructions to the jury, to which objection was made in the jury's presence, modified an essential element of the offense charged and thereby effectively amended the grand

jury's indictment in violation of the fifth amendment. *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

### A. *The Rule, Its Purposes, & Violations Requiring Reversal*

Rule 30 of the Federal Rules of Criminal Procedure provides:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. *Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.*

(counts 8, 14, 19, 24, 25, 26, 27, 35, 37, 40, 41, and 42), and false entries on bank records in violation of 18 U.S.C. § 1005 (counts 30, 31, 36, and 38). Woodul was convicted of conspiracy (count 1), misapplication of bank funds (counts 14, 23, 25, 26, and 37), and false entries on bank records (counts 30, 31, 36, and 38). Sanchez was convicted of conspiracy (count 1), misapplication of bank funds (counts 25 and 26), and false entries on bank records (counts 30 and 36).

Salinas was sentenced to: a five-year confinement term and $10,000 fine on count 1; a two-year confinement term, consecutive to the term imposed under count 1, and a $5,000 fine on count 8; a two-year confinement term, consecutive to the term imposed on count 8, and a $5,000 fine on count 14; a two-year confinement term, consecutive to the term imposed under count 14, and a $5,000 fine on count 19; and a one-year confinement term, consecutive to the term imposed under count 19, on count 24. The district judge also sentenced Salinas to two-year confinement terms on counts 25, 26, 27, 30, 31, 35, 36, 37, 38, 40, 41, and 42 to run concurrently with the confinement term imposed under count 1. Salinas' total sen-

tence, therefore, was twelve years confinement and $25,000 in fines.

Woodul was sentenced to a five-year confinement term on count 1, a consecutive two-year confinement term on count 14, and concurrent two-year confinement terms on counts 23, 25, 26, 30, 31, 36, 37, and 38.

Sanchez was sentenced to a four-year confinement term on count 1 and concurrent two-year confinement terms on counts 25, 26, 30, and 36.

7. It is clear from the record that the district judge granted defense counsel's motion to adopt all objections raised by the other defendants' counsel.

THE COURT: Right. If any one of the lawyers makes an objection, it is understood that the Court will allow the objection to run to the benefit of all the other defendants. R. vol. 6, at 84. Hence we treat as accruing to the benefit of all appellants on this appeal the requests made by counsel for appellant Salinas to present objections to the court's charge out of the hearing and presence of the jury, as well as the objections he attempted to make with respect to the district court's charge on the elements of a section 656 offense.

This multifaceted rule has several purposes. The purpose of limiting assignments of error to those portions of the court's charge to which objections have been made and grounds therefore stated is to "provide the trial court an opportunity to correct any error or omission in the charge before the jury begins its deliberations. If prompt objection is made, the error can then be corrected." *United States v. Arteaga-Limones*, 529 F.2d 1183, 1192 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976). *See also* 2 C. Wright, Federal Practice & Procedure § 484, at 284 (1969). The purpose of permitting parties to object to the court's charge out of the presence of the jury is "to permit full argument of objections to instructions." Fed.R. Crim.P. 30, 1966 Amendment Advisory Committee Notes, Title 18 U.S.C.A. at 240 (1975); 8A Moore's Federal Practice ¶ 30.04, at 30–19 (2d ed. 1977). It is also "designed to avoid the subtle psychological pressures upon the jurors which would arise if they were to view and hear defense counsel in a posture of apparent antagonism toward the judge. . . . While that goal might be served in many cases by a sufficiently low-tone bench conference, the ultimate way to assure the goal is to comply with the Rule." *Hamling v. United States*, 418 U.S. 87, 134, 94 S.Ct. 2887, 2916, 41 L.Ed.2d 590 (1974).[8]

Petitioners in *Hamling* sought reversal of their convictions because the district court denied their request to make objections to the court's instructions out of the jury's presence. While finding that the district court erred in refusing to permit counsel to make objections, which could not have been previously formulated, out of the presence of the jury, the Supreme Court held this procedural error did not mandate reversal in the absence of prejudice. In so holding the Court specifically rejected petitioners' position that failure to comply with Rule 30 constituted reversible error per se and, instead, approved the soundness of approaches taken by various courts of appeals "which have in some manner examined the prejudice to the defendant in deciding whether reversal is required where there is a failure to comply with Rule 30." *Id.* at 135, 94 S.Ct. at 2916.

These two approaches, taken by various courts of appeals in deciding whether a failure to comply with the provisions of Rule 30 constitutes reversible error, are: (1) such a violation is not reversible error unless the defendant demonstrates that he has been prejudiced; or (2) such a violation is not reversible error where it affirmatively appears that the defendant was not prejudiced. *Id.* at 133, 94 S.Ct. at 2915. The former standard places the burden upon a defendant to demonstrate the existence of prejudice resulting from a violation of Rule 30, whereas the latter would seem to require the government to establish a lack of prejudice.

While accepting both standards the Court did not endorse either,[9] merely holding that the Court of Appeals for the Ninth Circuit was correct in determining under the standard announced in *United States v. Schartner*, 426 F.2d 470 (3d Cir. 1970), that there was no prejudice to the petitioners from the failure to hold the instruction-objection session out of the jury's presence. *Id.* 418 U.S. at 135, 94 S.Ct. at 2916.

---

**8.** Even low-tone bench conferences run contrary to the rule's purpose, because such conferences may result in truncated consideration of the parties' objections, thereby limiting the trial judge's opportunity to perceive error and correct it prior to submitting the case to the jury.

[The out of the presence of the jury] procedure is preferable to hearing such objections at the bench while the jury waits to receive the case. Such bench conferences put pressure on all the participants to truncate their consideration of these matters.

2 C. Wright, Federal Practice & Procedure § 484, at 288 n. 44 (1969), *quoting*, Rezneck, *The New Federal Rules of Criminal Procedure*, 54 Geo.L.J. 1276, 1313 (1966).

**9.** The Supreme Court accepted the *Schartner* standard without rejecting other more lenient tests for reversible error: "[w]e express no view, of course, as to whether a court of appeals may follow the apparently more lenient standard of requiring the defendant to demonstrate that he was prejudiced." 418 U.S. at 135, 94 S.Ct. at 2916.

Under the *Schartner* standard a district court's failure to comply with Rule 30's "out of the presence of the jury" requirement constitutes reversible error "unless it be demonstrable on an examination of the whole record that the denial of the right did not prejudice" the defendant's case. 426 F.2d at 480. By way of contrast, the Supreme Court, in *Hamling*, cited several cases, including two from this circuit, as holding that such a violation is not reversible error unless the defendant demonstrates that he has been prejudiced. *See, e. g., Sultan v. United States*, 249 F.2d 385 (5th Cir. 1957); *Hodges v. United States*, 243 F.2d 281 (5th Cir. 1957). Upon close examination, however, *Sultan* and *Hodges* do not take the same perspective in assessing the prejudice sustained by a defendant as a result of a Rule 30 violation.[10]

In *Sultan* appellants maintained that they were prejudiced by the district court's denial of counsel's right, under Rule 30, to make objections to the court's supplemental instructions to the jury. Upon inquiry by the jury as to the offense of aiding and abetting, the district judge gave a supplemental instruction correctly reiterating the principles covering conspiracy, but declined to instruct on aiding and abetting "for the obvious reason that aiding and abetting was not in the case." 249 F.2d at 388. Appellant's counsel was *not* cut off in his objections to this refusal, his contentions on such additional instructions being clearly and immediately set forth, and properly rejected. This Court, per then Circuit Judge, and now Chief Judge, Brown found that "nothing in either the Judge's words or the setting indicates that Saul's counsel or Saul was prejudicially placed in the hard position of challenging the Judge in the jury's presence. *Hodges v. United States*, supra." *Id.*

In *Hodges*, also written by then Circuit Judge Brown, this Court reversed appellant's convictions and remanded for a new trial "because we [were] unable to satisfy ourselves on [the] record that substantial harm was *not* done . . . when the Court required Hodges' counsel to state his objections to the Court's charge in the presence of the jury." 243 F.2d at 283 (citations omitted, emphasis added). The *Hodges* Court viewed Rule 30 as:

a wholesome rule bottomed on good sense which ought not to be weakened by tacit approval of breaches under a too easy application of the rule on harmless error, Fed.R.Crim.P. 52(a). Promulgated presumably because the administration of criminal justice demonstrates that substantial and irretrievable harm can come if persons charged with crimes and their counsel are compelled in the presence of the jury to engage in what to untrained laymen may appear to be criticism and condemnation of the Court or the judge presiding over it, the avoidance of that harm can best be assured by genuine adherence to the spirit and practice of the rule. *Where the breach is not technical, momentary or inadvertent, and the record indicates that the defendant has as best he might in the awkward embarrassment of the situation registered opposition to such proceeding, that there may be no affirmative, actual demonstration of harm does not relieve the reviewing court from most careful appraisal.*

243 F.2d at 283 (emphasis added).

After evaluating the record in light of these general principles, the *Hodges* Court reversed appellant's conviction because the Court entertained serious *doubt* as to whether Hodges had been prejudiced by the district court's violation of Rule 30: "[i]n such a process of evaluation the circumstances of the record engender a considerable doubt." *Id.* at 284. Two portions of the record were emphasized. First, the *Hodges* Court was disturbed by the fact that defense counsel's request to make objections to the court's charge out of the presence of

---

**10.** It should be noted that both *Hodges* and *Sultan* were decided well before the 1966 amendment to Rule 30 which established the right to make objections to a court's charge out of the *presence* of the jury. Prior to this amendment the rule merely required that counsel be afforded the opportunity to object to the court's instructions out of the *hearing* of the jury. The Supreme Court nevertheless found these pre-amendment cases applicable.

the jury was denied only after an "extended colloquy in the jury's presence." During this colloquy the district judge made a statement which this Court felt "may well have been considered [by the jury] as a disparagement, not only of criminal lawyers generally, but this particular one." *Id.* at 284.[11] Second, the Court noted that this episode could not be isolated from other developments which occurred during the course of the trial. Specifically, the Court pointed to certain statements by the trial judge in which the judge characterized one of defense counsel's questions on vital cross-examination as "silly," and warned defense counsel " 'not [to] try to frustrate the trial' and for him 'to keep * * *' within reason on these motions', otherwise the Court would 'have to shut down on you' and order this counsel, after counsel himself voluntarily brought the matter to the Court's attention, to be sworn and take the witness stand to state the facts concerning the inadvertent presence of a witness in the court room contrary to the rule." *Id.* at 284.

The approach employed by the *Hodges* Court suggests a violation of Rule 30 constitutes reversible error where the reviewing court, after examining the entire record, entertains considerable doubt as to whether the defendant has been prejudiced. The *Sultan* standard, on the other hand, seems to require the defendant to demonstrate actual prejudice before a Rule 30 violation warrants reversal. On this appeal, however, we need not resolve any inherent conflict between these *apparently* different standards,[12] for it is clear that appellants in the case sub judice were prejudiced by the district court's noncompliance with Rule 30's requirements where the trial judge erroneously instructed the jury, over defense counsel's timely objection in the jury's presence, modifying an essential element of the offense charged and, thereby, effectively amending the grand jury's indictment in violation of the fifth amendment. *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).[13]

**B. *The Violation***

On the evening of August 10, 1977, the day before the district judge charged the jury in the case at bar, the district judge, after the jury was excused, informed counsel that he had "gone over all of the basic requests in the charge that each side has requested and I think basically I'm going to give you what you have asked for and considerably more, as a matter of fact." R.

---

**11.** In *Hodges* we said

> In the colloquy the judge made a statement concerning aiders and abettors to which defense counsel remarked, "I have a little different idea." To this the Court spontaneously replied, "I know you do. I think most criminal lawyers do disagree with what the judges think * * *."
> Of course we know, as did all counsel, that far from impugning the motives or integrity of criminal lawyers or this counsel, the statement by this able and experienced trial judge was really a genuine homely tribute to Anglo-American advocacy for he was quick to add: "That's their business and it is perfectly legitimate. You have a right to your view. I am not saying that you don't."
> *But the question is not its inherent accuracy or the effect on judges or lawyers. To laymen comprising the jury in this total setting, it may well have been considered as a disparagement, not only of criminal lawyers generally, but this particular one.*

243 F.2d at 284 (emphasis added).

**12.** In *United States v. Schartner*, 426 F.2d 470 (3d Cir. 1970), the Court of Appeals for the Third Circuit observed that this Court had employed different standards in determining whether a violation of Rule 30 constituted reversible error.

> Some decisions have held or indicated that the trial court's failure to comply with Rule 30 is not reversible error unless the defendant demonstrates he has been prejudiced thereby. See *Sultan v. United States*, 249 F.2d 385, 388 (5 Cir. 1957) . . . . Other cases assert that noncompliance with the rule warrants reversal unless it appears affirmatively that the defendant was not prejudiced. See *Hodges v. United States*, 243 F.2d 281, 283–284 (5 Cir. 1957) . . . . .

426 F.2d at 479 (other citations omitted).

**13.** Since we find that appellants were prejudiced under *Stirone* we do not reach the question of whether reversal is required under *Hodges*, appellants having urged on this appeal that the district judge made numerous disparaging remarks with reference to defense counsel, and that these remarks fall within the *Hodges* paradigm.

vol. 19, at 3371. Thereafter the court proceeded to discuss, in very general terms and without any written copy of the instructions he would give the jury, some of the issues upon which the court's instructions would touch. This entire "discussion" comprises ten pages of the trial transcript.[14]

During this colloquy the trial judge generally indicated he would instruct the jury on the essential elements of all of the crimes of which appellants stood accused; the trial judge did not specifically define what those elements were. Counsel for appellant Salinas reminded the court that he had filed numerous requested charges. The court's response was:

> You don't have to give those again. If I don't give them in exactly the form you like, I try to, I think I have, but if I haven't, I'll give it in my own form, I'll give it to you as I have said in the form that you have requested and in which you feel most comfortable in arguing your case if I conceivably can unless I feel like that it might do in some manner violence to the law, in which case, I will give my own.

R. vol. 19, at 3377–78.

Finally, when counsel for appellant Salinas perceived that the trial judge was not going to cover every proposed instruction he said:

> Your Honor, one thing. If we are not going to go through each one of [the requested instructions] at this point, in light of the fact that we've got a lot of them and it is a fairly complicated case, could we have the jury excused for just a brief moment after the Court gives it charge so that we can at least give the Court a good idea of what our objections will be so in case you want to change it we don't have the jury hear what we are all going over it.

R. vol. 19, at 3378. The district judge emphatically denied counsel's proper request under Rule 30:

> No, I'm not going to do that, gentlemen. You pay attention to my charge. I've told you what's going to be in it. And if you feel like I haven't given it the [way] you expected then you can approach the bench and tell me.

R. vol. 19, at 3378–79.

On August 11, 1977, after the district judge had charged the jury, he directed counsel to approach the bench; the jury was still physically present in the courtroom. The court asked counsel whether they had any objections or exceptions to the charge. The following colloquy ensued.

MR. GOLDSTEIN [counsel for appellant Salinas]: Yes, Your Honor. First, we would renew our objection while we are out of the hearing and presence of the jury at the bench, but my understanding of the rule is that [the] jury should be technically removed and we should have a hearing but not in the presence—

THE COURT: We are having it out of the presence of the jury.

MR. GOLDSTEIN: But they are in the room.

THE COURT: That's all right, but they can't hear us.

MR. GOLDSTEIN: The first is—Your Honor, in order to expedite this—

THE COURT: You don't have to give me those again. If you have filed them and I have refused them, then you've got your exception. That's all you have to do.

MR. GOLDSTEIN: Note our exception to that.

THE COURT: Sure, absolutely.

MR. GOLDSTEIN: There are a couple of problems that I have.

THE COURT: The reason I keep the jury is that I can charge them right here and I often do.

\*  \*  \*  \*  \*  \*

MR. GOLDSTEIN: In the charge on misapplication, Your Honor, the Court charged that they could prove up either officer, director, agent or employee of the

---

14. The entire trial transcript consists of 3,665 pages; the court's instructions to the jury con-

sists of approximately forty-one pages. R. vol. 20, at 3579–619.

bank. And I believe with respect to Mr. Salinas he is only charged as a director and we would respectfully request that the jury be charged that the Government must meet its—

THE COURT: I'm just going to give it like the law is. If the evidence shows he wasn't, then that's it. Whatever the evidence is, they will remember it.

MR. GOLDSTEIN: On each of the other requested instructions—

THE COURT: You will have those.

MR. GOLDSTEIN: We don't need—

THE COURT: No, you don't need to repeat them. They are filed and they are overruled. I have considered them and I have given most of them, haven't I?

MR. GOLDSTEIN: Many of them, yes, sir, Your Honor.

THE COURT: In one form or another. Mr. Barrera, do you have any objections or exceptions.

MR. BARRERA [Counsel for appellants Sanchez & Woodul]: No, Your Honor.

R. vol. 20, at 3613–15.

The district court, therefore, clearly violated Rule 30's requirement that a party, upon request, be given an opportunity to object to the court's jury instructions out of the presence of the jury.

### C. Reversible Error

■ As indicated above appellants were convicted on multiple counts of violating 18 U.S.C. § 656 (1976). In many of those counts the grand jury specifically indicted the individual appellants in their alleged respective capacities with regard to Citizens State Bank: in counts 19, 24, 25, 26, 27, 35, 37, 40, 41, and 42 the grand jury indictment charged Salinas *only* as a *director* of Citizens; in counts 14, 23, 25, 26, and 37, the grand jury indictment charged Woodul *only* as *president* of Citizens; and in counts 25 and 26 the grand jury indictment charged Sanchez *only* as a *director* of Citizens. Such allegations are part of a proper indictment for an alleged violation of section 656, for the accused's connection with a national or federally insured bank is one of the four elements of a section 656 violation.[15]

Prior to the trial court's charging the jury, appellant Salinas' counsel submitted a written request, asking the court to instruct the jury that in order to convict Salinas on those grounds of the indictment in which he was charged as a "director" the jury was required to find Salinas was a director of Citizens State Bank.[16] The district judge refused to give this requested instruction. Instead, the district judge charged the jury that in order to establish an offense under 18 U.S.C. § 656 the government had to

**15.** The four elements of a section 656 violation are: (1) that the accused was an officer, director, agent or employee of a bank; (2) that the bank was connected in some way with a national or federally insured bank; (3) that the accused willfully misapplied the monies or funds of the bank; and (4) that the accused acted with intent to injure and defraud the bank. *United States v. Landers*, 576 F.2d 94, 96 (5th Cir. 1978); *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976).

**16.** Appellant Salinas requested the following instruction:

You are instructed that no person may serve as a director of a bank unless he is the bona fide owner in his own right of the unpledged and unencumbered stock in said bank of a par value of One Thousand Dollars ($1,000.00). *In this connection, I charge you that, as to any offense charged against ENRIQUE M. SALINAS in which it is alleged he acted as a director of Citizens States Bank of*

*Carrizo Springs, Texas, you must not only find beyond a reasonable doubt that he committed the act alleged, if he did, with the specific intent alleged, but you must further find beyond a reasonable doubt that, at the time of the alleged commission of such offense he was the bona fide owner in his own right of the unpledged and unencumbered stock in said bank of a par value of One Thousand Dollars ($1,000.00); if you do not so find, or if you have a reasonable doubt thereof, then you will acquit the Defendant, ENRIQUE M. SALINAS, as to such alleged offense and say by your verdict "Not Guilty".* R. vol. 3, at 449 (emphasis added). In effect, therefore, appellant Salinas requested the district judge to instruct the jury that the prosecution had to prove beyond a reasonable doubt that he was a director of Citizens because he was indicted in that capacity in various counts of the grand jury's indictment.

establish, beyond a reasonable doubt, "[t]hat *a given Defendant* was at the time of the offense charged in the indictment *an officer, director, agent or employee of the bank . . . .*" R. vol. 20, at 3604 (emphasis added).

■ Appellants assert that this instruction constructively amended the terms of the grand jury's indictment in violation of the fifth amendment. The government maintains that if appellants' argument has any merit, it is inapplicable to appellants Woodul and Sanchez because: (1) there was no dispute regarding their position in relation to Citizens; and (2) they had no objections to the charge when specifically asked. As to the government's second point, we have already found that objections interposed by any defense counsel were treated by the district judge as accruing to the benefit of all defendants. *See* note 7 *supra*. The colloquy between counsel for appellant Salinas and the district judge, see Part I B *supra*, evidences that timely objection was made to the court's charge permitting the jury to find that a given defendant had violated section 656 if the government proved, beyond a reasonable doubt, that the defendant was "an officer, director, agent or employee of the bank." This objection was sufficient, in light of the district court's refusal to grant counsel a Rule 30 instruction-objection session out of the hearing and presence of the jury, to preserve the point on appeal. *Cf. United States v. Fernandez*, 456 F.2d 638, 644 (2d Cir. 1972) (enforcement of Fed.R.Crim.P. 30's requirement that a party be afforded an opportunity to object to the court's charge out of the jury's hearing and presence will relieve a party, where such request is refused, of the burden of showing that an objection to the charge pressed upon appeal has been sufficiently made below). Additionally, Mr. Barrera, counsel for appellants Woodul and Sanchez, stated that he had no objections to the court's charge only after counsel for appellant Salinas unsuccessfully attempted

to obtain a Rule 30 hearing to articulate sufficiently the grounds for his objection. In light of the district court's earlier ruling that objections made by any defense counsel would accrue to the benefit of all defendants, we read Mr. Barrera's response that he had no objections to the court's charge as meaning that he had no objections other than those previously made by counsel for appellant Salinas and noted by the district judge.

The government's first point, that there was no dispute regarding Woodul's and Sanchez's respective positions in relation to Citizens State Bank,[17] is also without merit: under *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), a conviction obtained through a constructive judicial amendment of a grand jury's indictment must be set aside even where there is sufficient evidence adduced by the government at trial to support a conviction based upon the allegations in the grand jury indictment.

In *Stirone* petitioner had been convicted in federal court for unlawfully interfering with interstate commerce in violation of the Hobbs Act, 18 U.S.C. § 1951. The indictment alleged that from 1951 to 1953 a man by the name of Rider had a contract to supply ready-mixed concrete from his plant in Pennsylvania to be used for the erection of a steel-processing plant at Allenport, Pennsylvania. For the purpose of performing this contract, the indictment alleged, Rider caused supplies and materials (sand) to move in interstate commerce. The indictment also went on to charge that Stirone, using his influential union position, did unlawfully obstruct, delay and affect interstate commerce in the "aforesaid materials and supplies" by extorting money through the wrongful use of threats of labor disputes. Over petitioner's objection as to materiality and relevancy, the district judge permitted the government to offer evidence of an effect on interstate com-

---

17. The government emphasizes that both Woodul and Sanchez admitted holding their respective offices at the bank, thus establishing their official connection with the bank and satisfying that element of the offense. *See* R. vol. 18, at 2992–93, 2995, 2997, 2999; *id.* vol. 19, at 3265, 3318.

merce not only in sand brought into Pennsylvania from other states but also in interference with steel shipments from the steel plant in Pennsylvania into other states. Again over petitioner's objection, the trial judge charged the jury that so far as the interstate commerce aspect of the case was concerned, Stirone's guilt could be rested either on a finding that (1) sand used to make the concrete had been shipped from another state into Pennsylvania, *or* (2) Rider's concrete was used for constructing a mill which would manufacture articles of steel to be shipped in interstate commerce. On motion for judgment of acquittal, the district court held that a sufficient foundation for introduction of both kinds of proof was laid in the indictment. The Court of Appeals affirmed, holding that interference with the sand movements into Pennsylvania was barred by the Hobbs Act. The Supreme Court of the United States reversed, holding that although Rider's dependence on sand from outside Pennsylvania entitled him to Hobbs Act protection, the district court erred in submitting to the jury the question of whether prospective steel shipments from the steel mills construed with Rider's cement satisfied the interstate commerce element of Hobbs Act jurisdiction.

Ever since *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849, was decided in 1887, it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself. . . . The *Bain* case . . . stands for the rule that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him. . . . Yet the court did permit that in this case. The indictment here cannot fairly be read as charging interference with movements of steel from Pennsylvania to other States nor does the Court of Appeals appear to have so read it. The grand jury which found this indictment was satisfied to charge that Stirone's conduct interfered with interstate importation of sand. But neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill later to be built with Rider's concrete. *And it cannot be said with certainty that with a new basis for conviction added, Stirone was convicted solely on the charge made in the indictment the grand jury returned.* Although the trial court did not permit a formal amendment of the indictment, the effect of what it did was the same. And the addition charging interference with steel exports is neither trivial, useless, nor innocuous. . . . *While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error.* . . . The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge. Thus the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for interference with interstate commerce which the grand jury did not charge.

361 U.S. at 215–18, 80 S.Ct. at 272–74 (citations & footnote omitted, emphasis added). The Court also observed that "when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened." *Id.* at 219, 80 S.Ct. at 274. In conclusion, the Court held that because of the trial court's admission of evidence and under its charge the jury *might have* convicted Stirone on a charge the grand jury never made against him, interference with commerce in steel from the mill to be built with Rider's concrete. This was fatal error.

Under *Stirone's* progeny, a constructive amendment of an indictment is considered to be reversible error per se if there has been a modification at trial in the elements of the crime charged. *See, e.g., Watson v. Jago,* 558 F.2d 330, 334 (6th Cir. 1977); *United States v. Somers,* 496 F.2d 723, 744 (3d Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974). This Court has recognized that an amendment of the terms of a grand jury's indictment requires reversal whereas variance between the charging terms of the indictment and the evidence adduced at trial may constitute harmless error. *United States v. Bursten,* 453 F.2d 605, 607 (5th Cir. 1971) (dictum), *cert. denied,* 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83 (1972).

■ The district judge's charge modified an essential element of the section 656 offenses charged against appellants when he instructed the jury that it could convict "a given defendant" if the government proved, beyond a reasonable doubt, that the defendant was an "officer, director, agent or employee" where the indictment charged Salinas and Sanchez, only in their respective capacities as directors, and Woodul only as president of Citizens State Bank. Under *Stirone* this is fatal error requiring reversal, for appellants *may have* been convicted on a ground not charged in the grand jury's indictment. Such prejudice, therefore, also requires reversal for the district court's violation of Rule 30. The result reached on this point also is consistent with the purposes underlying Rule 30: it is clear from the record that appellants' counsel were never afforded the opportunity to make "full argument of the objections to the court's charge." Counsel did not have a written copy of the court's jury charge on August 10, 1977, when the district judge conducted what can only be described as a perfunctory charge conference. Counsel's objections made at the bench conference after the jury was charged and in its physical presence were truncated: the district judge repeatedly cut off counsel when an objection was made, indicating that any requested instruction not given had been considered and rejected, that all exceptions were noted, and that further argument and objection were unnecessary and unwelcome. Such behavior flies in the face of Rule 30's purpose of affording the trial judge an opportunity to evaluate counsel's objections to the jury charge and make any necessary correction without undue waste of judicial resources. Finally, counsel emphasized on this appeal that during the bench conference they feared the jury *might* have heard the discussion between counsel and the judge. This fear was based on the fact that there were several occasions during the trial where there were reports of individuals situated in the rear of the courtroom who overheard prior bench conferences. Although the jury may not have actually heard the colloquy between counsel and the judge at which objections to the jury charge were made, fear that the jury *might* have heard is one of the evils at which Rule 30's "out of the hearing and presence of the jury" requirement was aimed. *See* note 8, *supra,* and accompanying text.

Because of the prejudice suffered by appellants by reason of the district court's violation of Rule 30, the judgments of conviction entered on those counts on which the jury found appellants guilty of violating 18 U.S.C. § 656 must be reversed and the matter remanded for a new trial consistent with this opinion. Before treating appellants' other assignments of error, however, we must briefly address other points raised by the government with respect to the district court's violation of Rule 30 and constructive amendment of the grand jury indictment through its erroneous instruction.

First, the government asserts that under the concurrent sentence doctrine, any error found by this Court would result only in the reversal of the one-year sentence imposed against appellant Salinas on count 24. The government's syllogistic logic flows from the following premises: (1) appellants' argument is inapplicable to Woodul and Sanchez because (a) there was no dispute regarding their positions with the bank, and (b) they made no objections to the court's charge; (2) any merit to the argument for appellant Salinas is limited to the conviction

on count 24 because it is the only count in which Salinas alone was charged and the sentence was not imposed concurrent to that on the conspiracy count; and (3) in the other counts on which a conviction was obtained and a consecutive sentence imposed (counts 1, 8, 14, 19), Woodul or Sanchez were also charged, thereby supporting Salinas' conviction on these counts under the theory of aiding and abetting. We have already rejected premise one of the government's logic. As to point three, the government's aiding and abetting theory, we need only emphasize that reversal of the section 656 convictions is required under *Stirone* not because of insufficient evidence to support convictions on the theory of aiding and abetting or as a principal, but because the court's charge provided the jury with the opportunity to convict appellants on a theory *not* charged in the grand jury's indictment. With respect to the government's second point, and the applicability of the concurrent sentence doctrine generally, we exercise our discretion in reaching the questions presented notwithstanding the validity of the conspiracy conviction consecutive to which sentences for section 656 violations were imposed. *See generally United States v. Evans*, 572 F.2d 455, 476 & n. 21 (5th Cir.), *cert. denied*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978).

■ The government's second basis for challenging appellants' contention that the court's charge constructively amended the indictment is the trial court's earlier instruction that the evidence had to be considered separately as to each appellant:

> You are further instructed in your deliberations to consider the guilt or innocence of each Defendant on trial here today charged in the indictment separately, distinctly and apart from the others weighing the evidence in this case as it pertains to that Defendant and that De-

fendant alone, and not to the other Defendant or Defendants charged in the indictment.

R. vol. 20, at 3588–89. This general instruction seems to caution the jury not to convict any of the defendants upon the basis of "guilt by association." It does not unmistakably and clearly inform the jury that each of the defendants on trial could be convicted of the section 656 violations charged only if the jury found, as charged in the indictment, that Salinas and Sanchez were directors, and Woodul the president of Citizens State Bank. Therefore, we do not view this general instruction as curing the error committed in charging the jury that each of the defendant-appellants could be convicted if the jury found he was an officer, director, agent *or* employee of the bank.

## II. SINGLE CONSPIRACY

Appellants filed timely pre-trial motions seeking dismissal or severance of Count 1 of the indictment in which they were charged with conspiring, in violation of 18 U.S.C. § 371, to commit the substantive offenses alleged in Counts 2 through 49. These motions were based upon the asserted ground of prejudicial misjoinder under Rule 8(b) [18] of the Federal Rules of Criminal Procedure: appellants maintained that the indictment did not reflect the existence of a single conspiracy, as charged, but set forth multiple, unrelated criminal allegations. These motions were denied. At the close of the government's case and at the close of the evidence, motions for judgment of acquittal, based upon insufficiency of the evidence presented as well as the grounds urged in the pre-trial motions, were renewed and, subsequently, denied. Appellants now urge, on this appeal, that the district court erred in denying their motions to dismiss and for judgment of acquittal as to Count 1

---

**18.** Rule 8(b) provides:

> **(b) Joinder of Defendants.** Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transac-

tions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed.R.Crim.P. 8(b).

of the indictment, asserting one conspiracy was alleged but several unrelated agreements were proved. In support of their position, appellants place reliance upon this Court's decision in *United States v. Levine*, 546 F.2d 658 (5th Cir. 1977). After examining *Levine* we conclude appellants' reliance is misplaced and their argument is without merit.

In addressing the question of prejudicial misjoinder under Rule 8(b) the *Levine* Court announced that "[i]n the absence of an argument of prosecutorial bad faith . . . allegations of an indictment will be accepted as true in deciding a rule 8(b) motion." *Id.* at 663. *See also United States v. Lane*, 584 F.2d 60, 62 (5th Cir. 1978). Therefore, to assess appellants' contention that several unrelated conspiracies were misjoined, we must decide "whether or not the conspiracy count as it stands was sufficient to satisfy rule 8(b)'s requirement that the defendants 'have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.'" *Levine*, 546 F.2d at 664. *See also United States v. Wasson*, 568 F.2d 1214, 1221 (5th Cir. 1978).

In *Levine* this Court reversed appellants' convictions and remanded for a new trial because the indictment charged separate, distinct and unrelated offenses by different defendants in contravention of Rule 8(b). As viewed by the *Levine* Court, the wording of count one of the five-count indictment charged a wheel conspiracy in which one defendant, Harvard (the hub), conspired with other defendants, including Levine and Abrams (representing the spokes), to commit the substantive obscenity offenses charged in the indictment's other four counts. Counts two and three charged Harvard, Abrams, and others with interstate transportation of obscene film, in violation of 18 U.S.C. § 1462, and interstate transportation of obscene film for sale and distribution, in violation of 18 U.S.C. § 1465. These two counts collectively alleged that Harvard, a filmmaker, agreed with Abrams to make and distribute an obscene film. A separate agreement was alleged in counts

four and five, charging Harvard, Levine, and others with the same substantive offenses, but based upon a different obscene film. The government relied upon the conspiracy count to provide the common link between the otherwise unrelated transactions and to demonstrate the existence of a common scheme or plan among the several defendants. In rejecting the government's position, and holding that appellants had been misjoined in contravention of Rule 8(b), the *Levine* Court emphasized several facts: (1) neither Levine nor Abrams knew each other; (2) neither had any financial interest in the obscene films produced by the other; and (3) of the twenty-one overt acts set forth in the indictment's conspiracy count, only one overt act even mentioned Harvard, Levine and Abrams together. Moreover, the government conceded that there was no documentary or direct evidence showing that Abrams and Levine had any connection whatsoever with each other's films or were aware or should have been aware of each other's activities during the period the alleged conspiracy took place. Other than the one overt act alleged, which the *Levine* Court found had been inserted in the indictment as the "result of inadvertence on the government's part," the indictment alleged no facts which could have supported the conclusion that Abrams and Levine were cognizant of each other during the alleged conspiracy. Even assuming the government intentionally included the one overt act in which Harvard, Levine and Abrams were all named, the *Levine* Court concluded that the presence of one allegation that the defendants acted together among twenty other overt acts which pointed overwhelmingly to the existence of two, unrelated conspiracies to distribute obscene films was too tenuous to support the substantial identity of facts or participants necessary to justify Rule 8(b) joinder. *United States v. Marionneaux*, 514 F.2d 1244, 1248–49 (5th Cir. 1975). The only real underpinning for the government's conspiracy count was found to be its erroneous legal premise that proof of proximate or simultaneous conspiracies with one common

conspirator was sufficient to establish the existence of a single conspiracy. The indictment in the case sub judice, and the evidence adduced at trial, stand in sharp contrast to *Levine.*

Count 1 of the indictment in the case at bar charged a conspiracy in violation of 18 U.S.C. § 371; the grand jury alleged that appellants Salinas, Woodul, and Sanchez, as well as others, unlawfully conspired to misapply bank funds in violation of 18 U.S.C. § 656, and to make false entries on bank records and books in violation of 18 U.S.C. § 1005. The indictment specifically alleged that the form and substance of the conspiracy was as follows:

It was part of the conspiracy that the said ENRIQUE M. SALINAS would obtain control of the said Citizens State Bank by acquiring existing stock and newly issued recapitalization stock and place into positions of responsibility his co-conspirators LEWIS WOODUL as President, and DAN SANCHEZ, Jr., as a director of the said Citizens State Bank.

It was further part of the conspiracy that after the said LEWIS WOODUL and DAN SANCHEZ, Jr., assumed positions of authority with the said Citizens State Bank, the monies and funds of the bank would be misapplied in the form of numerous loans to other co-conspirators, purporting to be legitimate loans made in the ordinary course of banking, but which were in truth and fact improperly granted, improperly secured or totally unsecured and granted with a reckless disregard for the best interest of the said Citizens State Bank.

It was further part of the conspiracy that substantial proceeds of the aforementioned loans would be converted to the personal use of the said ENRIQUE M. SALINAS and other members of the conspiracy, beyond the legal loan limit of Citizens State Bank and with a reckless disregard for the best interest of the said bank.

It was further part of the conspiracy that numerous false and fraudulent entries would be made in the records of the said Citizens State Bank, for the purpose of concealing the true nature of the loans hereinbefore described and to deceive the Federal Deposit Insurance Corporation and agents and examiners appointed to examine the affairs of the bank.

It was further part of the conspiracy that entries would be made in the books and records of the said Citizens State Bank, appearing to reflect legitimate loans made to certain co-conspirators which were not bona fide loans, so that thereafter the conspirators could sell or participate a share of those transactions to other financial institutions, thereby obtaining additional funds from other financial institutions to disburse to and among themselves through the method previously described.

It was further part of the conspiracy that certificates of deposit would be issued by Citizens State Bank which had not been paid for, or had been paid for by checks drawn on foreign banks which had not been paid, and that those certificates of deposits would be taken to other financial institutions and pledged for loans.

It was further part of the conspiracy that checks drawn on foreign banks by the co-conspirators would be given immediate credit by the Citizens State Bank, even though in some instances the checks were never honored.

R. vol. 1, at 2–3. In furtherance of the conspiracy, the grand jury's indictment alleged fifty-three overt acts, forty-eight of which consisted of Counts 2 through 49. Of the indictment's forty-eight substantive counts, two named Woodul and Sanchez but not Salinas,[19] seven named Salinas and Sanchez but not Woodul,[20] eighteen named Salinas and Woodul but not Sanchez,[21] and sev-

19.  Counts 34 and 39.

20.  Counts 43, 44, 45, 46, 47, 48, and 49.

21.  Counts 2–10, 12–15, 18, 19, 29, 31, 37, and 38.

en named all three appellants, Salinas, Woodul, and Sanchez.[22]

■ Under the standards announced in *Levine* the allegations of the conspiracy count of the indictment, which we accept as true in dealing with the Rule 8(b) motion, are sufficient to support the substantial identity of facts or participants requirement and justify joinder in this case where: (1) Salinas, Woodul, and Sanchez knew and worked with each other; (2) appellants each had a financial interest in their respective and joint violations of federal law committed in furtherance of the conspiracy in that each stood to gain financially; and (3) there was a substantial overlap in membership in the substantive offenses alleged, with appellants together allegedly committing seven of the substantive offenses charged in the indictment. Moreover, of the four counts in which appellants were named together and the jury returned guilty verdicts, appellants do not attack the sufficiency of the evidence underlying the jury's verdict on any of these counts.[23] Accordingly, since there is sufficient evidence to support the jury's verdict on these counts, and where such evidence provides a sufficient basis from which the jury could have inferred that each of the substantive offenses committed by appellants was part of an overall scheme to exploit ownership and control of Citizens State Bank, we cannot

say there was insufficient evidence for the jury to find the existence of one conspiracy. Therefore, the jury properly decided that there was only one conspiracy. *See generally United States v. Becker,* 569 F.2d 951, 961 (5th Cir.), *cert. denied,* 439 U.S. 865, 1048, 99 S.Ct. 188, 726, 58 L.Ed.2d 174, 708 (1978). Under *Levine, supra,* the district court properly denied appellants' Rule 8(b) motions.

### III. CONSPIRATORIAL HEARSAY

Appellants' final contention is that the district court committed reversible error in failing to conduct a hearing, out of the jury's presence, to determine the admissibility of conspiratorial hearsay. *See* Fed.R. Evid. 104(a), 801(d)(2)(E). This Court's recent *en banc* opinion in *United States v. James,* 590 F.2d 575 (5th Cir. 1979), *modifying* 576 F.2d 1121 (5th Cir. 1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979) makes clear that the standards enunciated therein are to be applied prospectively only, 590 F.2d at 583, and that all prior admissions of conspiratorial hearsay are to be evaluated on appeal in light of the tests established in *United States v. Apollo,* 476 F.2d 156 (5th Cir. 1973).

■ Having carefully examined the trial transcript, we conclude that the cautionary instruction[24] and procedures[25] em-

---

**22.** Counts 20, 21, 22, 25, 26, 30, and 36.

**23.** While agreeing with appellants that their convictions on counts 25 and 26, on which all three were convicted of misapplication under section 656, must be reversed because of a constructive judicial amendment to the grand jury's indictment and violation of Rule 30, Fed. R.Crim.P., we note that appellants have not challenged, in any other respect, the sufficiency of the evidence supporting their convictions on these counts.

    Furthermore, appellants in no manner challenge their convictions for making false entries under section 1005 on counts 30 and 36.

**24.** On four separate occasions, when defense counsel objected to hearsay testimony being

offered by the government, the district judge gave the jury cautionary instructions. An example of one of the trial court's instructions is as follows:

    Bear in mind that you cannot consider hearsay evidence of this type against any of the defendants who were not present when the statements were made outside of their hearing or presence, unless and until it has been determined that (first) the conspiracy alleged in Count one of the indictment was in fact created and did come into being and did exist and (secondly) in addition to that, it must be established beyond a reasonable doubt that the defendant not present, that is, the alleged

**25.** See note 25 on page 1295.

ployed by the district court substantially complied with *Apollo* standards. Appellants' contention, therefore, is without merit.

## IV. CONCLUSION

For the reasons set forth above, the judgments of convictions entered on all counts on which the jury found appellants guilty of violating 18 U.S.C. § 656 (1976) are reversed, and the matter is remanded for a new trial consistent with this opinion. In all other respects the judgments of conviction are affirmed.

AFFIRMED in part; REVERSED and REMANDED in part.

co-conspirator who was not present was found by you beyond a reasonable doubt to have become a member of the conspiracy. Until this has been established, these elements by separate and distinct and non-hearsay testimony, you may not consider this testimony against any of the co-conspirators, if any, that were not present. . . .

R. vol. 6, at 171–72. This is a proper cautionary instruction under *Apollo. United States v. Escamilla*, 590 F.2d 187, 189 (5th Cir. 1979).

In its final charge, the court also instructed the jury that it could consider conspiratorial hearsay against any particular defendant only if it first found that the conspiracy existed, that the declarant and the defendant were members of it, and that the statement was made during the course of and in furtherance of the conspiracy. R. vol. 20, at 3600.

25. Under the "prima facie case" standard enunciated in *United States v. Oliva*, 497 F.2d 130 (5th Cir. 1974), the district judge made a determination that the government had presented sufficient evidence, independent of the hearsay itself, to support a finding by the jury that the alleged conspiracy existed and that the declarant and the defendant against whom the statement was offered were members of the conspiracy. R. vol. 13, at 1318.