**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ernest ADAMS, Defendant-Appellant.**

**No. 84–4558.**

United States Court of Appeals,
Fifth Circuit.

Dec. 20, 1985.

**1118**

Julie Ann Epps, Ct. Appt., Jackson, Miss., for defendant-appellant.

George Phillips, U.S. Atty., Ruth R. Harris, Asst. U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before GOLDBERG, RANDALL and JOHNSON, Circuit Judges.

GOLDBERG, Circuit Judge:

Ernest Adams, a/k/a Ernest Cole, has been convicted on six counts of violating 18 U.S.C. §§ 922(a)(6) and 924(a). Because the record convinces us that Adams might have been convicted of a crime with which he was not charged, we reverse.

The indictment charged Ernest Adams with six counts of violating 18 U.S.C. § 922(a)(6) [1] and 18 U.S.C. § 924(a). [2] It alleged that on six separate occasions Adams purchased handguns using a Mississippi driver's license in the name of Ernest Cole. Each count read as follows:

That on or about [date] … ERNEST ADAMS, in connection with his acquisition of a firearm … from … a licensed firearms dealer, did knowingly furnish and exhibit a false, fictitious and misrepresented identification, that is, a Mississippi Driver's License Number 367–60–7243, to the firearms dealer, which identification was likely to deceive the firearms dealer with respect to a fact material to the lawfulness of the acquisition of the firearm by Ernest Adams … in that Ernest Adams represented that he was

---

**1.** 18 U.S.C. § 922(a)(6) provides that it shall be unlawful
> for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

**2.** 18 U.S.C. § 924(a) provides:

> Whoever violates any provision of this chapter or knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter, or in applying for any license or exemption or relief from disability under the provisions of this chapter, shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.

Sections 922(a)(6) and 924(a) create separate offenses. *U.S. v. Buck,* 548 F.2d 871 (9th Cir. 1977), *cert. denied,* 434 U.S. 890, 98 S.Ct. 263, 54 L.Ed.2d 175 (1977).

Ernest Cole, whereas, in truth and in fact, as he then well knew, he was Ernest Adams, in violation of Sections 922(a)(6) and 924(a), Title 18, United States Code.

There is no question that Adams purchased the handguns or that he presented in connection with each purchase a Mississippi Driver's License in the name of Ernest Cole. The difficulty with the trial and the judge's charge to the jury arises from the prosecution's efforts to present, and the judge's willingness to admit, evidence regarding Adams's alleged misrepresentations as to residence, when the indictment charged Adams only with misrepresentations as to name. By allowing proof of residence and by charging the jury so as to permit a conviction based on misrepresentation and false statements as to residence, the trial court constructively amended the indictment, thereby denying Adams his fifth amendment right to be tried only on those charges presented to and accepted by a grand jury.

*Factual Background and the Trial*

Ernest Adams was born in Mississippi, the illegitimate son[3] of Elnora Adams and Roosevelt Cole. His Mississippi birth certificate lists his name as Ernest Adams. His mother, whose parents had also been unmarried, then married a man named Adams to cover up her son's illegitimacy and protect him from the stigma she herself had felt while growing up. When Ernest got old enough, Roosevelt Cole told him that he was his true father. Tr. 590–93.

At the time of the handgun purchases, Adams had been a resident of Detroit for thirty years. He owned several businesses and several houses there. During those thirty years, he had visited Meridian, Mississippi, several times to be with the Cole side of his family. When he was in Mississippi and with the Coles, he went by the name Cole. Outside of Mississippi he generally went by the name Adams. *See infra* note 14.

Adams received the Mississippi driver's license in question on June 29, 1979, while visiting in Meridian. His Michigan license in the name of Adams had expired two months earlier. He gave as his name Ernest Cole, and as his mailing address he gave 1922 13th Ave. in Meridian. This address was that of Gloria Pearson, a woman to whom he later unsuccessfully proposed marriage. Back in Michigan, he obtained a Michigan driver's license in the name of Ernest Adams on June 12, 1980, and he received another Michigan license in the name of Ernest Cole on August 13, 1980.

The handgun purchase that forms the basis of the first count took place on October 25, 1980, at the Rock House Trading Post in Meridian. The other five purchases took place October 27 and 31, 1980, and February 19, March 13, and March 31, 1981, at either the Rock House Trading Post or Maxey's Gun Shop in Meridian.

Federal law required that Adams fill out ATF Form 4473 for each purchase. By means of this form, the Bureau of Alcohol, Tobacco and Firearms receives a record of every firearms transaction.[4] The form requests the following information of the purchaser: name, height, weight, race, residence, address, date of birth, place of birth. The form also requires that the purchaser answer eight questions concerning, among other things, the buyer's past criminal record. The form notifies the buyer that

---

3. We are reminded: "There are no illegitimate children—only illegitimate parents." Judge Leon R. Yankwich, *quoted in A New Dictionary of Quotations* (H.L. Mencken ed. 1966).

4. Section 922(a)(6) ... was enacted as a means of providing adequate and truthful information about firearms transactions. Information drawn from records kept by dealers was a prime guarantee of the Act's effectiveness in keeping "these lethal weapons out of the hands of criminals, drug addicts, mentally disordered persons, juveniles and other persons whose possession of them is too high a price in danger to us all to allow." 114 Cong.Rec. 13219 (1968) (remarks of Sen. Tydings.) Thus, any false statement with respect to the eligibility of a person to obtain a firearm from a licensed dealer was made subject to a criminal penalty. *Huddleston v. United States,* 415 U.S. 814, 824–25, 94 S.Ct. 1262, 1269, 39 L.Ed.2d 782 (1974).

any false statements or a false answer to any of the eight questions may subject him to criminal prosecution. In addition, 18 U.S.C. § 922(a)(6) makes the presentation of false identification in connection with the purchase a criminal offense, and 18 U.S.C. § 924(a) makes any false statement in connection with the purchase a criminal offense.

Adams presented his Mississippi license in connection with each purchase. He filled out the form in the name of Ernest Cole and gave as his residence address 1705 29th Ave. in Meridian. This address was Gloria Pearson's new address. He correctly gave the date of his birth as April 29, 1944, and the place of his birth as Utica, Mississippi, and he answered negatively each of the additional eight questions. The dealers testified that had Adams presented an out-of-state license or given an out-of-state residence address, they would not have sold him the guns, but Adams was not informed of this at the time. Tr. at 168–69.

The indictment was filed on January 7, 1983, and the defendant was arraigned on February 10, 1983, at which time the court, Russell, J., appointed counsel for the defendant. Upon motion of the defendant, an Order Granting Continuance was filed on June 29, 1983. The defendant's original court appointed counsel was allowed to withdraw from the case on June 11, 1984, and shortly thereafter the court appointed new counsel for the defendant. On July 6, 1984, the defendant moved to dismiss the indictment for violations of the Speedy Trial Act, and the District Judge denied the motion.[5]

The defendant was tried before a jury. The government offered ten witnesses and twenty-four exhibits, the defendant three witnesses and 16 exhibits. The jury returned a verdict of guilty on each of the six counts, and the judge sentenced Adams to a total of eleven years imprisonment and five years probation.

The government's theory of the case at trial was, in its own words, as follows:

The government's theory of the case presented during trial was that Adams presented a false, fictitious and misrepresented Mississippi Driver's License to licensed firearms dealers during the acquisition of the six firearms charged in the indictment. The government contended that the driver's license was false because it bore the name Ernest Cole, which was not Adams' true name, *and also because it bore a Meridian, Mississippi address, while the defendant was in fact not a Mississippi resident, but instead resided in Detroit, Michigan.*

Appellee's Brief at 3–4 (emphasis added). Consistent with this theory the government introduced evidence on the falsity of the name Ernest Cole and on the falsity of the Meridian, Mississippi, address. Not only did the government attempt to show that the address on the license was false, but it also introduced evidence to show that the address on the ATF form was false as well.

The defendant objected repeatedly but unsuccessfully to the introduction of evidence on the falsity of his residence. When the government attempted to show that the address on the license was false, he objected.[6] After the government rest-

---

**5.** We have reviewed defendant's Speedy Trial Act claims, which he continues to press on appeal, and find them completely without merit.

**6.** Counsel for Adams:

The Grand Jury charged this Defendant with using a false, fictitious and misrepresented identification of Mississippi driver's license in that Ernest Cole represented that he was Ernest Cole. Whereas in truth and in fact, as he then well knew, he was Ernest Adams. The Grand Jury didn't charge him, Your Honor, with using a false identification based on—the Grand Jury didn't charge him

with acquiring a Mississippi driver's license illegally. The Grand Jury charged him with using a driver's license which was fictitious, false and misrepresented in that the name was wrong. It—the Grand Jury did not charge him with using an identification which had a false, fictitious, or misrepresented street address, or false, fictitious, or misrepresented town or city address, or false, misrepresented, or fictitious state address. The name is the only thing this lawsuit is about. And that's the only thing I prepared for, because that's what the Grand Jury charged him with, a false name. I'm not prepared for this other. Tr. at 272.

ed, he moved for a judgment of acquittal, renewing his objection to proof of residence.[7] Shortly thereafter, defendant moved for a continuance to provide time to defend on the question of residence.[8] The trial judge denied the motion with the argument that the indictment adequately covered the proffered proof.[9] Having nonetheless attempted to counter the government's evidence on residence throughout the trial, defendant continued to insist in his closing argument that falsity of name was the only issue in the case.[10]

In his charge to the jury, the trial judge did not restrict his instructions to the falsity of the name. He first gave a general instruction on a necessary element of the

---

**7.** Counsel for Adams:

Your Honor, I have an additional ground for the motion for judgment of acquittal in that a person has a right under the Constitution of the United States to be apprised of the nature and cause of the accusation against him.

He has a right under Federal Law and the Constitution to be indicted and so advised. In this indictment, the only statement contained in the indictment is that Ernest Adams represented that he was Ernest Cole, whereas in truth and in fact [as] he then well knew he was Ernest Adams. And that was the only statement, Your Honor, that the driver's license was false, fictitious, or misrepresented. That was the only statement. And the Government has failed to prove that statement.

Tr. at 519. The judge responded that "it's identification that we're talking about, rather than whether he has the right or the wrong name. And so at this stage I think the Government has met [the burden for a prima facie case at this time] and performed with the statute, and the motion will be denied." Tr. at 526.

**8.** Counsel for Adams:

Your Honor, the Defendant respectfully moves for a continuance in this case in order to afford him adequate time to prepare for the proof as to ... the address stated on the driver's license in the town of Meridian and the State of Mississippi. And also, Your Honor, to prepare for the proof offered by the United States as to alleged fraudulent statements made on the application for the purchase of the firearm as to name, residence, street address, rather, city, Meridian, state, Mississippi, and zip code. Because, Your Honor, each of the six counts in the indictment contain an almost identical phrase, in that Ernest Adams represented that he was Ernest Cole, whereas in truth and in fact, as he then well knew, he was Ernest Adams.

And all of our trial preparation, Your Honor, has been to defend the six counts of the indictment as the Grand Jury stated them to be. Which were solely whether Ernest Cole was a legal name he could use to purchase a driver's license, and whether it was a legal name he could use to purchase firearms.

Tr. at 552–53.

**9.** The trial judge reasoned:

So I think that this is a question of identification, whether or not he falsely identified himself for the purpose of securing these six guns, regardless of what his name was. If he falsely represented himself for this particular purpose of getting these guns, knowing that he could not get the guns if he is a resident of Michigan and he had another name. That is the basis that I see of this indictment and the charges against him. It's a question of identity. As the Court will instruct during—at the close of this case, that you can use the name. You can adopt a name. One or more names. But it depends on the purpose for which you use that name. Whether it's for a purpose of fraudulently using it, or deceiving someone by it, or maybe for some other unlawful purpose. So you can have names, but it depends what the purpose and intent was in using the names. Whether it was a proper identity for the purpose it was so used.

So I think that the indictment covers what the proof covers what the indictment alleges against this Defendant.

Tr. at 559.

**10.** Counsel for Adams:

Now, we've heard a lot of evidence about address. About place of residence. About where he lived. Whether he lived in Meridian, or whether he lived in Detroit. Whether he lived with Gloria Pearson, or whether he lived in a house in Michigan. All that. All right. That's fine if the Government wants to prove it. But it's not enough if they don't prove the name. If you find that the Government failed to prove to you beyond a reasonable doubt that Ernest Cole was a false name, then you must acquit this Defendant. You must do it.

And the Court will instruct along those lines, and I hope you'll be careful about it to see if I misstated it to you. That's essential. The name. That's all I prepared for. I read the indictment. I wasn't prepared for this address.

Tr. at 664–65. In its closing argument, the government responded: "All this malarky that Defense is coming up with about the name is what we call particularity in the indictment to give the Defendant, you know, particulars. But the charge is the furnishing of the false I.D." Tr. at 672.

crime, that in acquiring the firearm, "the Defendant knowingly furnished, or exhibited a false or fictitious identification likely to deceive." Tr. at 689. Regarding the question of deceit, the court did not limit itself to the use of the name:

> In regard to the issue as to whether identifications furnished or exhibited to the dealer to buy the gun—if you so find from the evidence—were intended to deceive the dealer, you are instructed that as a general principle, under the law a person can adopt or utilize any name or names he or she wishes, provided it is not done for a fraudulent purpose. If you find from the evidence, as previously stated, that the purpose of the Defendant's furnishing and exhibiting a Mississippi driver's license, indicating the identity and address thereon for the purpose of deceiving or likely to deceive the dealer, then you may consider that such was done for a fraudulent purpose, and is not a legitimate use of the name.

> To establish a violation of the law just explained to you, the Government must show that the Defendant knowingly furnished and exhibited misrepresented identification with the general intention of deceiving or likely to deceive the dealer. Such intent may be determined by all of the facts and circumstances surrounding the case.

Tr. at 691–92.

The defendant objected to the instruction's reference to address:

> My theory is that a mailing address and identity are two different things. And they're charging him with using a false identity, and might convict him with using a false mailing address.

Tr. at 715.

## DISCUSSION

Defendant argues on appeal that the government's proof and the court's instructions constructively amended the indictment. In the alternative, he contends that the discrepancy between proof and indictment amounted to a prejudicial variance. The government responds that no amendment took place, and that even if there was a variance, it did not prejudice the defendant.

The requirement that a defendant be tried only on those charges set forth in the grand jury's indictment finds its origins in the fifth and sixth amendments. The fifth amendment commands: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." The sixth amendment gives every defendant "the right ... to be informed of the nature and cause of the accusation."

In *United States v. Young*, 730 F.2d 221, 223 (5th Cir.1984), Judge Wisdom, for the court, succinctly summarized the law of variances and constructive amendments:

> It is a long-established principle of our criminal justice system that, after an indictment has been returned, its charges may not be broadened through amendment except by the grand jury itself. *See Ex parte Bain*, 1887, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849. In *Stirone v. United States*, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252, a leading case, the Supreme Court recognized that a trial court's amendment of the indictment need not be explicit to constitute reversible error, but that it may be implicit or constructive. *Stirone* involved a conviction under the Hobbs Act, 18 U.S.C.A. § 1951 (1970). The indictment charged the defendant with obstructing the interstate movement of sand brought into Pennsylvania. The trial judge allowed the defendant's guilt to be based upon a finding that the defendant had interfered with the shipment of steel from Pennsylvania to other states. Stating that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him," 361 U.S. at 217, 80 S.Ct. at 273, the Supreme Court overturned the conviction:

> > "While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on charges

presented in an indictment returned by a grand jury.... [W]hen only one particular kind of commerce is charged to have been burdened a conviction must rest on the charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened."

*Id.* at 217–18, 80 S.Ct. at 273–74.

*Stirone* requires that courts distinguish between constructive amendments of the indictment, which are reversible *per se,* and variances between indictment and proof, which are evaluated under the harmless error doctrine. The accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged. *See United States v. Salinas (Salinas II),* 5th Cir.1981, 654 F.2d 319, 324, *overruled in part en banc on other grounds, United States v. Adamson,* 5th Cir.1983, 700 F.2d 953, 965 n. 18; *United States v. Ylda,* 5th Cir.1981 (per curiam), 653 F.2d 912, 914; *United States v. Salinas (Salinas I),* 5th Cir.1979, 601 F.2d 1279, 1282; *United States v. New Buffalo Amusement Corp.,* 2nd Cir.1979, 600 F.2d 368, 381 (Oakes, J., concurring); *United States v. Crocker,* 3rd Cir.1977, 568 F.2d 1049, 1059–60. In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment. *See Stirone,* 361 U.S. at 217, 219, 80 S.Ct. at 273, 274; *Ylda,* 653 F.2d at 914; *Salinas I,* 601 F.2d at 1290. If, on the other hand, the variation between proof and indictment does not effectively modify an essential element of the offense charged, "the trial court's refusal to restrict the jury charge to the words of the indictment is merely another of the flaws in trial that mar its perfection but do not prejudice the defendant." *Ylda,* 653 F.2d at 914 (footnote omitted). [emphasis added]

*Gaither v. United States,* 413 F.2d 1061, 1071–72 (D.C.Cir.1969) sheds additional light on the difference between constructive amendment and mere variance:

An amendment is thought to be bad because it deprives the defendant of his right to be tried upon the charge in the indictment as found by the grand jury and hence subjected to its popular scrutiny. A variance is thought to be bad because it may deprive the defendant of notice of the details of the charge against him and protection against reprosecution.

Because the leading amendment case of Ex parte *Bain* rested explicitly upon the Constitution, and because it apparently excludes any notion of a nonprejudicial amendment to the indictment, the concept of harmless error has not been applied to amendments. However, the strictness of this rule, perhaps inconsistent with present notions of efficient administration of justice, has been avoided by a simple expedient. Rather than amend the terms of an indictment, a prosecutor simply proves the facts which the amended indictment would have charged. Thus instead of an amendment, there is a variance. And the accepted rule is that a variance does not call for dismissal of the indictment except upon a showing of prejudice.

The *Stirone* case limited the use of this device. In that case, there was no actual amendment of the indictment—rather there was a variation in proof from the grand jury's charge. However, the Supreme Court found the variance substantial enough to amount to a constructive amendment of the indictment, and relied on *Bain* in ordering the indictment dismissed. The reason given was not that the variance deprived the defendant of notice or protection against double jeopardy, but rather that it infringed his "right to have the grand jury make the charge on its own judgment." [footnotes omitted].

The Supreme Court recently had occasion to reaffirm *Stirone* in *United States v. Miller,* —— U.S. ——, 105 S.Ct. 1811, 1816–

17, 85 L.Ed.2d 99 (1985). The Court made clear that the constructive amendment in *Stirone* had been condemned because it broadened the indictment:

> In *Stirone* the offense proved at trial was *not* fully contained in the indictment, for trial evidence had "amended" the indictment by *broadening* the possible bases for conviction from that which appeared in the indictment [to include obstruction of steel exports in addition to the obstruction of interstate movement of sand]. * * * Because the conviction might have been based on the evidence of obstructed steel exports, an element of an offense not alleged in the indictment, a unanimous Court held that the indictment had been unconstitutionally "broadened."
>
>> "The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment. Here, ... we cannot know whether the grand jury would have included in its indictment a charge that commerce in steel from a nonexistent steel mill had been interfered with. *Yet because of the court's admission of evidence and under its charge this might have been the basis upon which the trial jury convicted petitioner. If so, he was convicted on a charge the grand jury never made against him.* This was fatal error." 361 U.S., at 218–19, 80 S.Ct., at 273–74. [second emphasis added].

We have thoroughly reviewed the record in light of these standards. Our review compels us to a similar and inescapable conclusion: Because of the court's admission of evidence concerning residence and under its charge, false statements or identification concerning residence might have

been the basis of Adams' conviction. The manner in which the driver's license was false bears on an essential element of the crime charged. The grand jury chose to indict Adams for use of a driver's license that was false as to name. Had it desired to indict Adams for use of a driver's license that was false as to residence, it could have drawn up an indictment like that in *U.S. v. Harrelson*, 705 F.2d 733 (5th Cir.1983), where the indictment specifically alleged falsity as to both name and residence. Introduction of evidence concerning residence allowed the construction of "a factual basis that effectively modifie[d] an essential element charged." *U.S. v. Young*, 730 F.2d at 223. As such, the indictment was constructively amended and reversal is automatic.

The government argues that

> the actual charge in the indictment was that the defendant exhibited a "false, fictitious and misrepresented identification, that is, a Mississippi Driver's License Number 367–60–7243," and the government was, therefore, entitled to present any and all facts concerning the falsity of the driver's license. The language that the defendant "represented that he was Ernest Cole, whereas in truth and in fact, as he then well knew, he was Ernest Adams," did not limit the offense charged but was only surplusage.

Appellee's Brief at 9–10. The government therefore urges us to read each count of the indictment with the "surplus" language omitted.

While the notion of surplusage is not a novel one,[11] *Stirone* flatly condemns its application in this case. To repeat, *Stirone* held that

---

**11.** None of the cases cited by the government supports its assertion that the language regarding name is surplusage here. In *U.S. v. Hands*, 497 F.2d 929 (5th Cir.1974), *aff'd* 516 F.2d 472 (1975) (en banc), *cert. denied*, 424 U.S. 953, 96 S.Ct. 1427, 47 L.Ed.2d 359 (1976), and *United States v. Hyde*, 448 F.2d 815 (5th Cir.1971), *cert. denied*, 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1972), the surplusage was language that,

when omitted, left a narrower rather than a broader charge. In *Ingram v. United States*, 357 F.2d 339 (5th Cir.1966), the surplusage was language in the indictment that the mail pouches, for the theft of which defendant was convicted, contained letter mail. *Ingram* is easily distinguishable because the fact that the pouches contained letter mail was not an essential element of the crime charged.

when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, *even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened.* 361 U.S. at 217–18, 80 S.Ct. at 273 (emphasis added). Similarly, when only one particular kind of falsity is charged to have been made in furnishing a license, a conviction must rest on that charge and not another, even though a conviction might have rested on a more general indictment that omitted the reference to Ernest Cole.[12]

For all we know, the grand jury may have considered and rejected a charge on false residence. Our role, however, does not call for speculation as to what the grand jury might have done. What the grand jury did was to indict Ernest Adams solely for the use of the name Ernest Cole and nothing else. When the government and trial court went beyond the grand jury's charge, they constructively and impermissibly amended the indictment, thereby denying Adams a substantial right under the fifth amendment.[13]

### Conclusion

We are not insensitive to the often fatal hazards posed by the widespread sale and use of handguns. Since many states have chosen to forgo enactment of their own gun control laws, Form 4473 is often the only obstacle that stands between a society that is super-saturated with handguns and one that is only saturated. Given this state of affairs, zealous enforcement of the federal Gun Control Act becomes all the more important. Nonetheless, the fifth amendment commands that the products of this zealous enforcement be screened by a grand jury. Once the grand jury hands down the indictment, nobody—neither prosecutor, nor judge, nor jury—may amend it. The place for such amendment is before the grand jury, not in the courtroom. Because the indictment against Ernest Adams was constructively amended during trial, we reverse.

REVERSED.

---

**12.** We find it unnecessary to decide whether the form of the indictment urged by the government, in which the particular identification is specified but the manner in which the identification is false is omitted, would be sufficient. We note, however, that an indictment is not sufficient if it merely tracks the generic language of the statute; "it must descend to particulars." *United States v. Cruikshank,* 92 U.S. (2 Otto) 542, 558, 23 L.Ed. 588 (1876); *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). The question is whether this hypothetical indictment's descent into particulars—*i.e.,* listing the particular identification—goes far enough. For a case tending to undermine the government's contention, see *United States v. Nance,* 533 F.2d 699 (D.C.Cir. 1976) (allegation of false representations without specification of what they were or how they were false). For a case tending to support the government, see *Flying Eagle Publications, Inc. v. U.S.,* 273 F.2d 799 (1st Cir.1960) (indictment's allegation that 64 page magazine contained obscene material sufficient without alleging which particular stories or articles were obscene).

**13.** After a thorough review of the record, we conclude that the evidence would have been sufficient to convict Adams as charged in the indictment. Although the question is very close, we cannot conclude with the required certainty that "a reasonably minded jury *must* necessarily have entertained a reasonable doubt of [Adams'] guilt." *United States v. Vergara,* 687 F.2d 57, 60 (5th Cir.1982) (emphasis added). Retrial of Adams is therefore "not prohibited by the double jeopardy clause because our reversal is not predicated on evidentiary sufficiency." *U.S. v. Mize,* 756 F.2d 353, 357 n. 7 (5th Cir.1985).