IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 4, 2003

## STATE OF TENNESSEE v. ATTA NAJJAR

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-04022     Carolyn Wade Blackett, Judge**

————————

**No. W2003-00329-CCA-R3-CD  - Filed January 21, 2004**

————————

The defendant was convicted of aggravated rape and aggravated robbery. He contends on appeal that 1) the evidence was insufficient to support the convictions, and 2) the trial court erred in instructing the jury as to aggravated rape. The judgment for aggravated robbery is affirmed. We conclude that a constructive amendment of the indictment for aggravated rape occurred because the jury was permitted to convict the defendant based on an element different from that which was charged or included within the indictment. Accordingly, the judgment for aggravated rape is reversed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part,**
**Reversed in Part, and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

Robert Wilson Jones, District Public Defender, and W. Mark Ward, Assistant Public Defender (on appeal), and Leslie Ballin (at trial), Memphis, Tennessee, for the appellant, Atta Najjar.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tiffani Taylor and Gail Vermaas, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

The defendant, Atta Najjar, was indicted for one count of aggravated rape, a Class A felony, and two counts of aggravated robbery, a Class B felony. Following a jury trial, he was convicted of aggravated rape and one count of aggravated robbery. The trial court sentenced the defendant to twenty years for aggravated rape and twelve years for aggravated robbery, to be served concurrently for an effective sentence of twenty years. This appeal timely followed. The defendant contends on appeal that 1) the evidence was insufficient to support the convictions, and 2) the trial court erred

in instructing the jury as to aggravated rape. The judgment of the trial court for aggravated robbery is affirmed, and the judgment for aggravated rape is reversed.

## Facts

According to the victim's testimony, at approximately 1:00 a.m. on December 24, 2001, the defendant entered the Chevron gas station on Whitten Road in Memphis. The victim had been an employee at the Chevron for approximately three to four weeks and was working alone that night. The victim stated that she had never seen the defendant prior to that night and did not know the defendant at all. She and the defendant talked together in the store until around 3:00 a.m. The defendant was being friendly and asking about applying for a job. She recognized his voice because he often called the store inquiring about employment. During their conversation, the defendant asked to look at a knife in the display case on the counter. As the victim attempted to unlock the case, the defendant grabbed the key and opened the case. He removed a knife from the case, grabbed her from behind, and put the knife to her throat. The victim said that he then grabbed her by her hair and pushed her toward the cooler. He took her into the cooler and pulled down his pants. The defendant ordered her onto her knees and forced her to perform fellatio on him. During this time, the defendant pressed the knife to the back of her neck. He next told her to get undressed and lie on the floor. The defendant vaginally penetrated the victim while continually threatening her with the knife. She said that the defendant next made her turn over and face the floor while he unsuccessfully tried to anally penetrate her. During the incident, he repeatedly asked her how to get in the safe and cash register. The victim told him that she was unable to open the safe, but she did give him the code to open the cash register.

The defendant ordered the victim to remain in the cooler while he fled from the store. After the defendant had been gone for a while, the victim exited the cooler and pressed the silent alarm underneath the counter. She was unable to use the phone in the Chevron, so she ran across the street to the Amoco station and alerted the cashier that she had been robbed. Moments later, the police arrived at the Chevron. She ran back across the street and told the police what had just transpired. Numerous times, the victim pleaded with the police officers to retrieve the video tape recording from the gas station security cameras, because she believed that the entire incident was recorded. On the night of the incident, the victim said that she did not know that there was a key to the gas station office under the counter or that the video cameras were not recording. She said that she assumed the video cameras were recording because the monitors were working. The victim testified that she did not know how to shut off the recorder or where it was located.

Donna Leatherman, the manager of the Chevron, testified at trial. Police called her to the scene on the night of the incident. According to her calculations, approximately $280 was missing from the cash register that night. The station has four security cameras that normally record twenty-four hours a day. They are connected to a video recorder located in the gas station office. Normally, the office is kept locked. However, she later found out that the employees have access to a key located underneath the counter. When she arrived on the night of this incident, the office door was locked. She opened the door to retrieve the video tape for the police. At that time, she noticed that

the machine was not recording. She described this as "very unusual," because the recorder should have been operating that night.

The police directed the victim to go to the sexual assault resource center to be examined. Patricia Speck, an expert in forensic nursing and employee at the center, testified regarding a report prepared by a nurse at the rape center. According to the report, the victim was seen by a nurse at the center around 8:00 a.m. on December 24, 2001. Following an examination, the nurse determined that the victim had sustained "recent genital injuries." The report describes the injuries as bruises and superficial lesions. There were no signs of "extragenital injuries." According to Speck, the injuries could have been caused from either consensual or non-consensual sexual activity.

Chris Wenzler testified that he had known the defendant for approximately a year to a year and a half, but he had not seen him for almost two years before this incident. Wenzler came into contact with the defendant around 3:00 a.m. on December 26, 2001, at the International House of Pancakes (IHOP). He and the defendant had a conversation, during which time the defendant indicated that he was going to Ohio later that day by bus. Wenzler offered to give him a ride to the bus station, and the defendant agreed. The two men rode together to Wenzler's nearby apartment. According to Wenzler, during the ten minute trip to his apartment, the defendant admitted to robbing the Chevron on Whitten Road two days earlier. The defendant told him that he used a knife and took approximately $300.

Thelma Butler, a Memphis police officer, accompanied the defendant as he was transported back to Tennessee from Ohio. During this time, the defendant made a spontaneous statement that he remembered committing a robbery, but he did not remember committing a rape. He told her that he was high on drugs during the incident.

Another employee of the Chevron, Christy Kachouri, testified on behalf of the defendant. She said that she was a friend of the defendant and had worked with the victim at Chevron. Kachouri remembered seeing the defendant in the store at least two to four times while the victim was working. She considered the victim and the defendant to be friends and saw them engaged in conversation at the store on several occasions during the defendant's lengthy visits.

David Stinson had known the defendant for six to seven years and worked with him as a painter during December of 2001. He testified that he and the defendant went into the Chevron store numerous times while the victim was working. According to Stinson, the defendant knew the victim, and they would talk when he was in the store. In fact, he said that the victim even called the defendant by his nickname, Tony. Stinson said that everyone in the store knew the defendant.

The defendant testified that he had been going to the Chevron store for approximately a year to a year and a half prior to this incident. The store was near his apartment, and he went there several times a week. The defendant said that he had known the victim for about two to three weeks prior to this incident. He said that they had become friends. According to the defendant, he would often have long visits with her at night while she was working. They talked about how they were both

separated from their spouses. Eventually, a sexual relationship developed. He said that they would have sex either in the bathroom of the gas station or in the cooler. The defendant admitted to having sex with the victim on December 24, but he described the encounter as consensual. He said that, on the night of the incident, they were both talking about how they needed money. The victim took the money from the register and gave him half. She asked him to stay for a while, and he left around 3:30 a.m. He denied telling Wenzler and the police officer that he had robbed a gas station.

**Analysis**

The defendant contends on appeal that the 1) evidence was insufficient to support the convictions, and 2) trial court erred in instructing the jury as to aggravated rape.

I. Sufficiency of the Evidence

The defendant contends on appeal that the evidence was insufficient to support the convictions for aggravated rape and aggravated robbery. When a defendant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). This Court will not re-weigh the evidence, reevaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

As to the aggravated rape conviction, the defendant admits to having sexual intercourse with the victim. Thus, the only issues were whether the victim used a knife and whether the sex was consensual. See Tenn. Code Ann. § 39-13-502(a)(1). In direct opposition to the victim's testimony, the defendant contended that the sex was consensual and that he did not use a knife. Likewise, the victim testified that the defendant forced her, at knife point, to reveal the passcode for the cash register, while threatening to harm her and her children. See id. -402(a)(1); -401(a). Additionally,

two witnesses testified that the defendant admitted to robbing the gas station. Obviously, the jury chose to accredit the testimony of the State's witnesses over that of the defendant. With the above standard of review in mind, we conclude that the evidence was sufficient to support the convictions for aggravated rape and aggravated robbery.

II. Jury Instruction for Aggravated Rape

The defendant also asserts that the trial court erred in charging the jury on the alternative element of aggravated rape by bodily injury after the indictment specifically alleged that the aggravated rape was committed while the defendant was armed with a knife. The indictment for aggravated rape alleged as follows:

> THE GRAND JURORS of the State of Tennessee, duly selected, empaneled, sworn and charged to inquire for the body of the county of Shelby, Tennessee, upon their oath, present that:
>
> ATTA NAJJAR
>
> on December 24, 2001 in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully, intentionally, and forcibly while armed with a weapon, to wit: a knife, sexually penetrate [the victim], in violation of T. C. A. 39-13-502, against the peace and dignity of the State of Tennessee.

Aggravated rape may be committed in Tennessee in one of three ways. Tennessee Code Annotated section 39-13-502(a) provides:

> (a) Aggravated rape is unlawful sexual penetration of a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:
>> (1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon;
>> (2) The defendant causes bodily injury to the victim;
>> (3) The defendant is aided or abetted by one (1) or more persons; and
>>> (A) Force or coercion is used to accomplish the act; or
>>> (B) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless.

An indictment must inform the accused of "the nature and cause of the accusation." U. S. CONST. amend. VI; TENN. CONST. art. I § 9. In addition, Tennessee Code Annotated section 40-13-202 requires that an indictment state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment. An indictment that achieves its "overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements." State v. Hammonds, 30 S.W.3d 294, 300 (Tenn. 2000). Our supreme court has held that an indictment is sufficient to satisfy notice requirements if it "contains allegations that (1) enable the accused to know the accusation to which answer is required; (2) furnish the trial court

an adequate basis for entry of a proper judgment; and (3) protect the accused from a subsequent prosecution for the same offense." Id. at 299 (citing State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997)). A specific reference to a statute within the indictment is sufficient to place the accused on notice of the charged offense. See State v. Sledge, 15 S.W.3d 93, 94 (Tenn. 2000); State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999); Ruff v. State, 978 S.W.2d 95, 100 (Tenn. 1998). It is not necessary that an indictment allege a specific theory of liability to achieve the overriding purpose of notice to the accused. State v. Lemacks, 996 S.W.2d 166, 172 (Tenn. 1999).

While the indictment in this case merely referenced the aggravated rape statute in general, the language used was obviously taken from section one. See Tenn. Code Ann. § 39-13-502(a)(1). By choosing to specify a particular means of committing the offense in the indictment, the defendant was not given proper notice that the jury would be allowed to find him guilty under a different element of the offense. The defendant objected to the trial court's instruction regarding the bodily injury element. The trial court overruled the objection and found that it was proper because the indictment did not exclude bodily injury, and there was some evidence presented concerning bodily injury. The defendant was not given proper notice that he was being prosecuted for aggravated rape under the element of bodily injury to the victim. The indictment specifically charged penetration by force while armed with a weapon. Accordingly, the trial court's erroneous jury instruction allowed the jury to convict the defendant on an element not charged in the indictment.

If a charge does not appear in the indictment and is not a lesser offense included in the indictment, a jury cannot legally convict the defendant of that charge. State v. Cleveland, 959 S.W.2d 548, 552 (Tenn. 1997). The court may freely permit an amendment to an indictment with the defendant's consent. Tenn. R. Crim. P. 7(b). Without the defendant's consent, however, the court may permit the amendment of the indictment before jeopardy attaches only if "no additional or different offense is thereby charged and no substantial rights of the defendant are thereby prejudiced." Id. Except by action of the grand jury, no amendment may broaden or change the charges in an indictment after the indictment has been returned. State v. Goodson, 77 S.W.3d 240, 244 (Tenn. Crim. App. 2001). Constructive amendments of the indictment are *per se* reversible. Id. (citations omitted). In distinguishing between a constructive amendment of the indictment and variances between indictment and proof, this Court uses the following:

> The accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged . . . . In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment . . . .

Id. (quoting United States v. Adams, 778 F.2d 1117, 1123 (5th Cir. 1985). The trial court's erroneous jury instruction constructively amended the indictment. Therefore, we must reverse the conviction for aggravated rape and remand for a new trial on that offense.

## Conclusion

Based on the foregoing and the record as a whole, the judgment for aggravated robbery is affirmed.  We conclude that a constructive amendment of the indictment for aggravated rape occurred because the jury was permitted to convict the defendant on an element different from that which was charged or included within the indictment.  Accordingly, the judgment for aggravated rape is reversed, and we remand for a new trial on that offense.

_____
JOHN EVERETT WILLIAMS, JUDGE