# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 6, 2012 Session

## STATE OF TENNESSEE v. DEARICK STOKES

**Appeal from the Criminal Court for Shelby County**
**No. 09-01312       James M. Lammey, Jr., Judge**

---

**No. W2010-02622-CCA-R3-CD  - Filed May 10, 2012**

---

The defendant, Dearick Stokes, was convicted by a Shelby County Criminal Court jury of felony murder and attempted especially aggravated robbery, for which he received concurrent terms of life imprisonment and nine years, respectively.  In this direct appeal, he argues that the evidence was insufficient to sustain his felony murder conviction because the proof showed that the killing of the victim occurred during an attempted aggravated robbery, rather than an aggravated robbery, as alleged in the indictment.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Robert Brooks (on appeal); and Marvin Ballin and Gray Bartlett (at trial), Memphis, Tennessee, for the appellant, Dearick Stokes.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy P. Weirich, District Attorney General; and Lora Fowler and Kevin R. Rardin, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

According to the State's proof at trial, on the afternoon of July 13, 2008, the defendant and an accomplice shot and killed the victim, Bryan Hatchett, during an attempted robbery. The defendant was subsequently charged in a two-count indictment with felony murder during the perpetration of an aggravated robbery and attempted especially aggravated

robbery. In the following paragraphs, we have summarized the essential evidence that was presented at the defendant's February 9-13, 2010 jury trial.

On July 13, 2008, the defendant asked Kenneth Richardson, his partner in a "dope" business, to let him have the nine-millimeter pistol that the two men shared, telling him that he was "fixin' to go get some money." That same evening, the defendant called Richardson and told him that he had shot someone and injured his leg by jumping out of a moving vehicle. A short time later, the defendant sold the pistol to Richardson.

At approximately 4:12 p.m. on July 13, 2008, Kelvin Townsel was barbequing in the front yard of his sister's home, located at the corner of Warren and Ferguson in Memphis, when he heard gunshots. A few minutes later, he saw three individuals, including one he recognized as the defendant, running up the hill on Warren to the Clementine Apartments. Townsel saw one of the three men toss an object into a field during his flight, and he passed that information along to the police, who subsequently searched the field and found a .38 caliber revolver containing two spent rounds and one live bullet. Ballistics testing revealed that a bullet recovered from the victim's chest and another from his clothing had been fired through the barrel of that gun.

Memphis police officers responded to the shooting scene to find the victim's four-door Chevrolet HHR rolling slowly down the hill with its front passenger door and one of its rear passenger doors open, the victim lying dead on the driver's floorboard from multiple gunshot wounds, a Buick Rendevous nearby with a nine-millimeter bullet lodged in its steering column, and a spent nine-millimeter shell casing lying on the street. Over $300 in cash was recovered from the victim's body and a .8 gram bag of cocaine was found on the floorboard of the front passenger side of the victim's vehicle. A DNA swab sample taken from the interior front passenger door of the victim's vehicle matched the defendant's DNA profile.

Vincent Roberts saw the defendant on three separate occasions on the evening of July 14, 2008. The first time, he was at home when his cousin brought the defendant by his house to talk to him. The defendant first asked Roberts how much time he could get if he were with someone who killed a person and then told him that he had been with "Dwayne" and the victim in the victim's vehicle when "Dwayne" suddenly pulled a gun. The defendant told Roberts that he had gotten scared, jumped out of the vehicle, and then heard a gunshot.

Approximately thirty to forty minutes later, Roberts was leaving a neighborhood grocery when he overheard Kenneth Richardson say to the defendant, "I told you to leave the gun – made me give it to you anyway – and now you got a murder case and a charge partner."

-2-

Still later, the defendant returned to Roberts' house, where he gave a somewhat different version of events, telling Roberts that "Dwayne" had called the victim under the pretense of wanting to buy some pills from him, that he (the defendant) had gotten into the front passenger seat of the victim's vehicle while Dwayne got into the back, that he and Dwayne each pulled weapons on the victim to rob him, and that Dwayne then shot the victim in the back of the head. The defendant also showed Roberts a skinned place on his leg, telling him that his leg had been "scarred" when he jumped from the victim's moving vehicle after the shooting.

Photographs of the defendant taken by the police on July 17, 2008, show that he had a large scrape or injury to his lower right leg.

On the afternoon of July 16, 2008 Kenneth Richardson was arrested on drug charges. At the time of his arrest, he had a loaded nine-millimeter gun in his waistband and identification that belonged to "Dwayne Cooper, Jr." The nine-millimeter shell casing found at the crime scene and the bullet recovered from the Buick Rendevous matched the weapon recovered from Richardson.

## ANALYSIS

The sole issue the defendant raises on appeal is whether the evidence was sufficient to sustain his felony murder conviction. Specifically, he argues that the felony murder count of the indictment was constructively amended by both the evidence at trial and the trial court's jury instructions, which allowed the jury to find the defendant guilty if it found that the killing was committed in either the perpetration of, or attempt to perpetrate, an aggravated robbery. According to the defendant's argument, the killing's having occurred during the perpetration of a completed aggravated robbery was an essential element of his charged offense of felony murder because the State "chose to allege only that [he] killed the victim in the perpetration of a completed robbery, rather than the perpetration of an attempted robbery." The State argues, among other things, that the trial court properly instructed the jury because the felony murder count of the indictment specifically referred to the felony murder statute and the trial court used the pattern jury instruction for felony murder, which provides that, in appropriate fact situations, the trial court may wish to charge criminal attempt. We agree with the State.

Count one of the indictment charged that the defendant "did unlawfully and with the intent to commit AGGRAVATED ROBBERY kill BRYAN HATCHETT during the perpetration of AGGRAVATED ROBBERY, in violation of T.C.A. [§] 39-13-202, against the peace and dignity of the State of Tennessee."

Both the Federal and Tennessee Constitutions guarantee a criminal defendant knowledge of the "nature and cause of the accusation." U.S. Const. amend. VI; see also Tenn. Const. art. I, § 9. An indictment, therefore, must provide notice of the offense charged, adequate grounds upon which a proper judgment may be entered, and suitable protection against double jeopardy. Tenn. Code Ann. § 40-13-202 (2006); State v. Byrd, 820 S.W.2d 739, 740-41 (Tenn. 1991). "[A] defendant cannot legally be convicted of an offense which is not charged in the indictment or which is not a lesser offense embraced in the indictment." State v. Cleveland, 959 S.W.2d 548, 552 (Tenn. 1997) (citing State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996)).

"[A]fter an indictment has been returned, its charge may not be broadened or changed except by action of the grand jury." State v. Goodson, 77 S.W.3d 240, 244 (Tenn. Crim. App. 2001). There is a difference, however, between a constructive amendment to an indictment and a variance between the indictment and the proof:

> "[C]ourts [must] distinguish between constructive amendments of the indictment, which are reversible *per se*, and variances between indictment and proof, which are evaluated under the harmless error doctrine. The accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged. . . . In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment. . . . If, on the other hand, the variation between proof and indictment does not effectively modify an essential element of the offense charged, "the trial court's refusal to restrict the jury charge to the words of the indictment is merely another of the flaws in trial that mar its perfection but do not prejudice the defendant."

Id. (quoting United States v. Adams, 778 F.2d 1117, 1123 (5th Cir. 1985)).

A variance arises when the proof presented at trial departs from the allegations in the indictment. State v. Keel, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994). Before a variance will be deemed fatal to a prosecution, it must be both material and prejudicial. State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984); State v. Shropshire, 45 S.W.3d 64, 71 (Tenn. Crim. App. 2000). In general, a variance between an indictment and the proof at trial

> is not fatal if (1) the defendant is sufficiently informed of the charges levied against him so that he can adequately prepare for trial and, (2) the defendant is protected against a subsequent prosecution for the same offense based on double jeopardy grounds. The variance is not to be regarded as material when

-4-

the indictment and proof substantially correspond.  A material variance occurs only if the prosecutor has attempted to rely at the trial upon theories and evidence that were not fairly embraced in the allegations made in the indictment.

State v. Mayes, 854 S.W.2d 638, 640 (Tenn. 1993) (citations omitted).  As long as the defendant is not misled at trial, any variance is not considered to be a basis for reversal. Johnson v. State, 596 S.W.2d 97, 103 (Tenn. Crim. App. 1979).

We conclude that what occurred in the case at bar was not a constructive amendment of the indictment but instead a nonfatal variance between the indictment and the proof.  The indictment and the proof substantially corresponded and the indictment, which referenced the first degree murder statute, provided the defendant with sufficient notice and protection against double jeopardy.  Although the defendant asserts in his reply brief that "the indictment on its face" did not provide him with notice that he was charged with murder in the attempted perpetration of a robbery, he makes no claim that he was actually surprised at trial or unprepared to defend against the charge. The defense strategy that the defendant employed at trial, which consisted of his attempt to show that he was asleep at home at the time the victim was killed and had no involvement in the crimes, would pertain equally to a charge of murder in either the perpetration of, or attempted perpetration of, aggravated robbery.  Furthermore, the record does not show that the prosecutor attempted to rely on any theories or evidence that were not "fairly embraced in the allegations made in the indictment."  Mayes, 854 S.W.2d at 640.  The defendant is not, therefore, entitled to relief from his felony murder conviction.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE